## MANUFACTURING COMPANY *v.* TRAINER.

1. Letters or figures affixed to merchandise by a manufacturer, for the purpose of denoting its quality only, cannot be appropriated by him to his exclusive use as a trade-mark.
2. An injunction will not be granted at his suit to restrain another manufacturer from using a label bearing no resemblance to the complainant's, except that certain letters, which alone convey no meaning, are inserted in the centre of each, the dissimilarity of the labels being such that no one will be misled as to the true origin or ownership of the merchandise.

APPEAL from the Circuit Court of the United States for the Eastern District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. George M. Dallas* and *Mr. James E. Gowen* for the appellant.

*Mr. Samuel Dickson, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This is a suit in equity to restrain the defendants, D. Trainer & Sons, from using on ticking manufactured and sold by them the letters " A. C. A." in the sequence here named, alleged by the complainant to be its trade-mark, by which it designates

ticking of a particular quality of its own manufacture; and to compel the defendants to account for the profits made by them on sales of ticking thus marked.

It appears that the complainant, the Amoskeag Manufacturing Company, a corporation created under the laws of New Hampshire, commenced the manufacture of ticking at Amoskeag Falls, in that State, some time prior to 1834, and marked its products with a label or ticket consisting of a certain device, within which were printed, in red colors, the name of the company, its place of manufacture, the words "Power Loom," and in the centre the single letter " A " or " B " or " C " or " D," according to the grade of excellence of the goods, the first quality being indicated by the first letter and the decreasing quality from that grade by subsequent letters in the alphabet. The device, apart from the words mentioned, was a fancy border in red colors, square outside and elliptical within, and the words in the upper and lower lines of the label were printed in a line corresponding with the inside curve of the border.

In the year 1834, or about that time, the company introduced an improvement in its manufacture, by which it produced a grade or quality of ticking superior to any which it had previously manufactured. For goods of this quality it used in its label or ticket, in place of the single letter " A," the three letters " A. C. A." The original device, with its colored border and printed words, indicating the company by which and the place where the goods were manufactured was retained; the only alteration consisting in the substitution of the three letters " A. C. A." in place of the single letter " A." Subsequently the company changed its place of manufacture from Amoskeag Falls to Manchester, in the same State, and a corresponding change was then made in the label. The three letters mentioned were placed in the label or ticket on all goods of the very highest quality manufactured by the complainant, the single letter being retained in the labels placed on other goods to indicate a lower grade or quality. The combination of the three letters was probably suggested, as is stated, by the initials of the words in the company's name, — Amoskeag Company, — with the letter " A " previously used, to denote the best quality

of goods it manufactured. It is contended by the complainant that the combination was adopted and used to indicate, not merely the quality of the goods, but also their origin as of the manufacture of the Amoskeag Company. It is upon the correctness of this position that it chiefly relies for a reversal of the decree dismissing the bill.

On the part of the defendants the contention is that the letters were designed and are used to indicate the quality of the goods manufactured and not their origin; that it was so adjudged many years ago in a case to which the company was a party in the Superior Court of the city of New York, which adjudication has been generally accepted as correct, and acted upon by manufacturers of similar goods throughout the country; and that the letters, as used by the defendants on a label or ticket having their own device, and in connection with words different from those used by the complainant, do not mislead or tend to mislead any one as to the origin of the goods upon which they are placed.

The general doctrines of the law as to trade-marks, the symbols or signs which may be used to designate products of a particular manufacture, and the protection which the courts will afford to those who originally appropriated them, are not controverted. Every one is at liberty to affix to a product of his own manufacture any symbol or device, not previously appropriated, which will distinguish it from articles of the same general nature manufactured or sold by others, and thus secure to himself the benefits of increased sale by reason of any peculiar excellence he may have given to it. The symbol or device thus becomes a sign to the public of the origin of the goods to which it is attached, and an assurance that they are the genuine article of the original producer. In this way it often proves to be of great value to the manufacturer in preventing the substitution and sale of an inferior and different article for his products. It becomes his trade-mark, and the courts will protect him in its exclusive use, either by the imposition of damages for its wrongful appropriation or by restraining others from applying it to their goods and compelling them to account for profits made on a sale of goods marked with it.

The limitations upon the use of devices as trade-marks are well defined. The object of the trade-mark is to indicate, either by its own meaning or by association, the origin or ownership of the article to which it is applied. If it did not, it would serve no useful purpose either to the manufacturer or to the public ; it would afford no protection to either against the sale of a spurious in place of the genuine article. This object of the trade-mark and the consequent limitations upon its use are stated with great clearness in the case of *Canal Company* v. *Clark,* reported in the 13th Wallace. There the court said, speaking through Mr. Justice Strong, that "no one can claim protection for the exclusive use of a trade-mark or trade name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured, rather than protected, for competition would be destroyed. Nor can a generic name or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark, and the exclusive use of it be entitled to legal protection." And a citation is made from the opinion of the Superior Court of the city of New York in the case of the present complainant against Spear, reported in the 2d of Sandford, that "the owner of an original trade-mark has an undoubted right to be protected in the exclusive use of all the marks, forms, or symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed ; but he has no right to the exclusive use of any words, letters, figures, or symbols which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or symbol, which from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose."

Many adjudications, both in England and in this country, might be cited in illustration of the doctrine here stated. For the purpose of this case, and in support of the position that a right to the exclusive use of words, letters, or symbols, to indicate merely the quality of the goods to which they are affixed cannot be acquired, it will be sufficient to refer, in addition to

the decisions mentioned in Wallace and Sandford, to the judgment of the Vice-Chancellor in *Raggett* v. *Findlater*, where an injunction to restrain the use by the defendants upon their trade label of the term "nourishing stout," which the plaintiff had previously used, was refused on the ground that "nourishing" was a mere English word denoting quality. Law Rep. 17 Eq. 29. Upon the same principle letters or figures which, by the custom of traders, or the declaration of the manufacturer of the goods to which they are attached, are only used to denote quality, are incapable of exclusive appropriation; but are open to use by any one, like the adjectives of the language.

If, now, we apply the views thus expressed to the case at bar, we shall find the question involved to be of easy solution. It is clear from the history of the adoption of the letters " A. C. A." as narrated by the complainant, and the device within which they are used, that they were only designed to represent the highest quality of ticking which is manufactured by the complainant, and not its origin. The device previously and subsequently used stated the name of the manufacturer, and no purpose could have been subserved by any further declaration of that fact. And besides, the letters themselves do not suggest any thing, and require explanation before any meaning can be attached to them. That explanation when made is that they are placed in the device of the company when it is affixed to the finest quality of its goods, while single letters are used in the same device when it is attached to goods of an inferior quality. They are never used by themselves, but merely as part of a device containing, in addition to the border in red, several printed terms. Alone the letters convey no meaning; they are only significant as part of the general device constituting the trade-mark. Used in that device to denote only quality, and so understood, they can be used by others for a similar purpose equally with the words "superior" or "superfine," or other words or letters or figures having a like signification.

We are aware that there is in the record the testimony of several witnesses to the effect that they understood that the letters were intended to indicate the origin as well as the qual-

ity of the goods to which they were attached, but it is entirely overborne by the patent fact that the label previously disclosed the name in full of the manufacturer and by the history of the adoption of the letters, as narrated by the complainant. As it was pertinently observed in the case in Sandford, if purchasers of the ticking read the name of the company, the letters can give no additional information, even if it be admitted that they are intended to indicate the name of the company. And if they do not read the name as printed, the letters are. unintelligible. If an explanation be asked of their purpose in the label, the only·reasonable answer which can be given is the one which corresponds with the fact that they are designed merely to indicate the quality of the goods.

But there is another and equally conclusive answer to the suit. The label used by the defendants is not calculated to mislead purchasers as to the origin of the goods to which it is attached. It does not resemble the device of the complainant. Its border has a different figure ; it is square outside and inside. It has within it the words " Omega " and " Ring Twist," as well as the letters " A. C. A." Neither the name of the complainant, nor of the place where its goods are manufactured, nor the words " Power Loom," are upon it. The two labels are so unlike in every particular, except in having the letters " A. C. A." in their centre, that it is impossible that any one can be misled in supposing the goods, to which the label of the defendants is attached, are those manufactured by the complainant. The whole structure of the case thus falls to the ground. There is no such imposition practised upon the public and no such fraud perpetrated upon the manufacturers, in attempting to dispose of the goods of one as those of another, as to call for the interposition of a court of equity.

*Decree affirmed.*

MR. JUSTICE CLIFFORD dissenting.

Symbols or devices used by a manufacturer or merchant to distinguish the products, manufactures, or merchandise which he produces, manufactures, or sells, from that of others, are called and known by the name of trade-marks. They are used in order that such products, manufactures, or merchandise may

be known as belonging to the owner of the symbol or device, and that he may secure the profits from its reputation or superiority.    15 Am. Cyclopedia, 832.

Equity courts in all civilized countries have for centuries afforded protection to trade-marks, the object of such protection being not only to secure to the individual the fruits of his skill, industry, and enterprise, but also to protect the public against fraud.

Property in a trade-mark is acquired by the original application to some species of merchandise or manufacture of a symbol or device not in actual use to designate articles of the same kind or class.

Devices of the kind, in order that they may be entitled to protection in a court of equity, must have the essential qualities of a lawful trade-mark ; but if they have, the owner becomes entitled to its exclusive use within the limits prescribed by law, the rule being that he who first adopts such a trade-mark acquires the right to its exclusive use in connection with the particular class of merchandise to which its use has been applied by himself or his agents.

Prior use is essential to any such exclusive claim, as the right to protection begins from such actual prior use ; nor does the right to protection extend beyond the actual use of the device.    Hence the use of it on one particular article of manufacture or merchandise will not prevent another from using it on another and different class of articles, the rule being strictly applied that the right to protection in equity is limited to the prior use of the symbol by the owner.

Sufficient appears to show that the plaintiffs, at an early period in the fourth decade of the present century, engaged in the manufacture of a fabric known as ticking of various grades and quality, and that subsequently they made a valuable improvement in the mode of manufacturing the fabric, which enabled them to produce a very superior articles.    Before the introduction of the improvement they had been in the habit of marking their products in that species of manufacture with one of the first four letters of the alphabet, to designate the different grades of their manufacture when offered for sale in the market. Thirty-four years ago or more they introduced the new im-

provement in the manufacture of the fabric, and adopted the distinctive trade-mark, of which a fac-simile is exhibited in the transcript.    When examined, it will be seen that it consists of the corporate name of the complainants, with a rough engraved surrounding, and the letters " A. C. A." plainly and conspicuously printed in the centre of the circular outside edge.

Conclusive proof is exhibited that the peculiar combination of letters adopted by the complainants as a symbol of trade originated with them, and that it suggested itself to them as comprising the initial letters of their familiar corporate name, with the addition of the letter " A " at the close, which had previously been used by them as indicating the best quality of the fabric manufactured by them before they made the alleged improvement.

Single letters of the kind are frequently used as a mark of quality; but the proofs in this case show to a demonstration that the peculiar combination of letters adopted by the complainants at the period mentioned were not adopted to denote quality merely, but as an appropriate and distinguishing trade-mark, symbol, or device, to indicate to the public and to purchasers that the fabric which bears the mark was of the manufacture of the manufacturing company of the complainants.    Beyond all doubt, they adopted the symbol or device, and affixed it to the fabric of their trade to indicate the origin and ownership of the article.

Few manufactured products bear in their own external appearance sufficient evidence of their real character to protect the purchaser against fraudulent imitations.    Integrity in manufacture and uniformity in quality are high recommendations to purchasers, and manufactured goods falling within that category are much preferred, both by the purchasers and consumers of the same; and when by long experience the public have learned to associate these elements of recommendation with a special symbol or brand, the wide and profitable sale of the articles bearing the same is assured, and the exclusive possession and use of the symbol or brand becomes of great value to the real owner.    Purchasers are also interested that such a trade-mark should receive protection, as it is a guaranty of genuineness, and its value is proportioned to the business repu-

tation of the owners of the same and of the excellence of their manufactures.    4 Johns. Cyclopedia, part 2, p. 916.

Infringement by the respondents is charged, and the complainants pray for an injunction and for an account.    Service was made, and the respondents appeared and set up various defences, as follows: 1. That the alleged trade-mark was never designed or used as such, but merely to designate one of the grades of the fabric which the complainants manufactured. 2. That the complainants are estopped by a prior decision of a court of competent jurisdiction to set up that the alleged symbol is a trade-mark. 3. They admit that they mark their goods with the letters " A. C. A.," but they deny that the mark is fraudulent or that it is calculated to deceive the public. 4. They deny that their conduct is in the slightest degree fraudulent or inequitable, or that the sale of their goods injures the complainants.

Proofs were taken, hearing had, and the Circuit Court entered a decree dismissing the bill of complaint.    Prompt appeal was taken by the complainants to this court, and they assign the following causes of error: 1. That the Circuit Court erred in entering a decree dismissing the bill of complaint. 2. That the court erred in not granting the injunction as prayed. 3. That the court erred in not decreeing that the complainants are entitled to an account. 4. That the court erred in not sustaining the bill of complaint.

Attempt is made in argument to show that the symbol of the complainants was not adopted by them for any other purpose than to designate the grade or quality of the fabric which they manufacture and sell in the market; but it is a sufficient answer to that proposition to say that it is wholly unsupported by evidence, and is decisively overthrown by the proof introduced by the complainants.

Words or devices, or even a name in certain cases, may be adopted as a trade-mark which is not the original invention of the party who appropriates the same to that use.    Phrases, or even words or letters in common use, may be adopted for the purpose, if at the time of their adoption they were not employed by another to designate the same or similar articles of production or sale.    Stamps or trade-marks of the kind are

employed to point to the origin, ownership, or place of manufacture or sale of the article to which it is affixed, or to give notice to the public who is the producer, or where it may be purchased. *Canal Company* v. *Clark*, 13 Wall. 311, 322.

Subject to the preceding qualifications a trade-mark may consist of a name, symbol, figure, letter, form, or device, if adopted and used by a manufacturer or merchant in order to designate the goods he manufactures or sells, or to distinguish the same from those manufactured or sold by another, to the end that the goods may be known in the market as his, and to enable him to secure such profits as result from his reputation for skill, industry, and fidelity. Upton, Trade-marks, 9 ; *Taylor* v. *Carpenter*, 2 Sandf. (N. Y.) Ch. 603.

Brands or stamps called trade-marks, says Waite, may consist of a name, figure, letter, form, or device adopted and used by a manufacturer or merchant in order to designate the goods that he manufactures or sells, and to distinguish them from those manufactured or sold by another, to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry, or enterprise. 6 Waite, Actions and Defences, 21.

Such a manufacturer or merchant who first adopts such a trade-mark, and is accustomed to affix the same to a particular fabric of his manufacture or sale to distinguish it from all others, has a property in it, and may maintain an action for damages if used by another, or he may restrain another from using it by application to a court of equity. *Hall* v. *Barrows*, 4 De G. J. & S. 149, 156 ; s. c. 12 W. R. 322, 323.

Judicial protection is granted in such a case upon the ground that the honest, skilful, industrious manufacturer or enterprising merchant who has produced or brought into the market an article of use or consumption that has found favor with the public, and who by affixing to it some name, mark, device, or symbol which serves to distinguish it as his and from that of all others, shall receive the first reward of his honesty, skill, or enterprise, and shall in no manner and to no extent be deprived of the same by another who to that end appropriates the same or a colorable imitation of the same to his production, so that the public are or may be deceived or misled. *Wolfe*

v. *Barnett & Lion*, 24 La. An. 97 ; *Newman* v. *Alvord*, 15 N. Y.
189, 196 ; *Lee* v. *Haley*, Law Rep. 5 Ch. Ap. 155 ; *Blackwell*
v. *Wright*, 73 N. C. 310, 313.

Nothing can be better established, says the Master of the
Rolls, and nothing ought to be otherwise than fully established
in a civilized country, than that a manufacturer is not entitled
to sell his goods under the false representation that they are
made by a rival manufacturer.   *Singer Manufacturing Co.* v.
*Wilson*, 2 Ch. D. 434, 440 ; Browne, Trade-marks, sect. 385 ;
*Osgood* v. *Allen*, 1 Holmes, 185, 194.

When we consider, says Duer, the nature of the wrong that
is committed when the right of property in a trade-mark is
invaded, the necessity for the interposition of a court of equity
becomes more apparent.   He who affixes to his own goods an
imitation of an original trade-mark, by which those of another
are distinguished and known, seeks by deceiving the public to
divert to his own use the profits to which the superior skill
and enterprise of the other had given him an exclusive title,
and endeavors by a false representation to effect a dishonorable
purpose by committing a fraud upon the public and upon the
true owner of the trade-mark.   *Amoskeag Manufacturing Co.*
v. *Spear*, 2 Sandf. (N. Y.) 599, 605 ; *The Collins Company* v.
*Brown*, 3 Kay & J. 423, 428.

Thirty years and more before the suit was commenced the
plaintiff company adopted the trade-mark in question and af-
fixed the same to their improved manufacture of ticking, and
it appears from the evidence that they have continuously from
that date to the day the bill of complaint was filed used the
same as the symbol to designate that peculiar manufacture,
which of itself is sufficient to show, if any thing in the nature
of proof can be, that the first defence set up in the answer
ought to be overruled.

Much discussion of the second defence cannot be required,
as the statement of the proposition that the complainants are
estopped to ask relief in this case because they were partially
unsuccessful in a prior suit against another party is quite suf-
ficient for its refutation.   Neither argument nor authority is
necessary to show that it has no foundation in law or justice,
and it is equally clear that the supposed analogy between an

admiralty decree *in rem* and a decree dismissing a bill in equity for the invasion of a trade-mark is illusory, unfounded, and without the slightest legal effect.

Suppose that is so, still the respondents deny that the trade-mark which they use is in the slightest degree fraudulent, or that it is calculated to deceive the public. They admit that they use the letters " A. C. A.," but they deny that in any other respect they have used the trade-mark adopted by the complainants.

Manufacturers and merchants have severally the unquestioned right to distinguish the goods they manufacture or sell by a peculiar mark or device, so that the goods may be known in the market as the product or sale of the owner of the trade-mark, or device, in order that they may thus secure the profits which the superior repute of the goods may be the means of giving to the producer or seller. *Gillott* v. *Esterbrook*, 48 N. Y. 374, 376.

Confirmation of that proposition is found in all the reported cases, and it is equally true that the owners of such trade-marks are entitled to the protection of a court of equity in the exclusive use of the symbols they have thus adopted and affixed to their goods, the foundation of the rule being that the public interest as well as the interest of the owner of the trade-mark requires that protection. 2 Story, Eq. Jur., sect. 951.

Such a party has a valuable interest in his trade or business, and having appropriated a particular label or trade-mark indicating to those who wish to give him their patronage that the article is made or sold by him or by his authority, or that he carries on his business at a particular place, he is entitled to protection against any other person who attempts to pirate upon the good-will of his customers or of the patrons of his trade or business by sailing under his flag without his authority or consent. *Partridge* v. *Menck*, 2 Barb. (N. Y.) Ch. 101.

Redress is given in such cases upon the ground that the party charged is not allowed to offer his goods for sale, representing them to be the manufacture of the first and real owner of the trade-mark, because by doing so he would be guilty of a misrepresentation, and would deprive the real owner of the

profits he might make by the sale of his goods which the purchaser intended to buy.

Compensation for such an injury was in early times given to the injured party by an action of deceit at common law, long before the Court of Chancery attempted to exercise jurisdiction to grant relief for such wrongful acts.  In such an action it is doubtless true that the plaintiff is required to allege that the party charged infringed the trade-mark with a fraudulent intent, and to prove the charge as alleged, in order to secure a verdict and judgment for redress.  Certain early cases in equity may be found where it is held that it is requisite that the allegation and proof in a chancery suit should be the same; but the practice in equity has long been settled otherwise, the rule now being that the injury the owner of the trade-mark suffers by the offering for sale in the market of other goods side by side with his, bearing the same trade-mark, entitles the real owner of the trade-mark to protection in equity, irrespective of the intent of the wrong-doer, it being held that the inquiry done to the complainant in his trade by loss of custom is sufficient to support his title to relief.

Neither will the complainant be deprived of remedy in equity, even if it be shown by the respondent that all the persons who bought goods from him bearing the trade-mark of the real owner were well aware that they were not of the complainant's manufacture.  If the goods were so supplied by the wrong-doer for the purpose of being resold in the market, the injury to the complainant is sufficient to entitle him to relief in equity.

Nor is it necessary, in order to entitle the party to relief, that proof should be given of persons having been actually deceived, or that they bought goods in the belief that they were of the manufacture of the complainant, provided that the court is satisfied that the resemblance is such as would be likely to cause the one mark to be mistaken for the other.  *Edelston* v. *Edelston*, 1 De G. J. & S. 185; *McAndrew* v. *Bassett*, 4 id. 380; Sebastian, Trade-marks, 70.

Two trade-marks are substantially the same in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such purchaser usually gives, and to cause him to purchase the one supposing it

to be the other. *Gorham Company* v. *White*, 14 Wall. 511; *Mc-Lean* v. *Fleming*, 96 U. S. 245, 256; Adams, Trade-marks, 107.

Difficulties attend the effort to describe with precision what resemblance is necessary to constitute an infringement, and perhaps it is not going too far to say that the term is incapable of exact definition as applied to all cases. Grant that, and still it is safe to say that no manufacturer or merchant can properly adopt a trade-mark so resembling that of another engaged in the same business as that ordinary purchasers buying with ordinary caution are likely to be misled.

Positive evidence of fraudulent intent is not required where the proof of infringement is clear, as the liability of the infringer arises from the fact that he is enabled through the unjustifiable use of the trade-mark to sell a simulated article as and for the one which is genuine. *McLean* v. *Fleming*, *supra.*

Unless the simulated trade-mark bears a resemblance to that which is genuine, it is clear that the charge of infringement is not made out, and it is doubtless true that the resemblance of the simulated one to the genuine must be such that the former is calculated to deceive or mislead purchasers intending to buy the genuine goods; but it is a mistake to suppose that the resemblance must be such as would deceive persons seeing the two trade-marks placed side by side. Exact definition may not be attainable; but if a purchaser looking at the article offered to him, said Lord Cranworth, would naturally be led from the mark impressed on it to suppose it to be the production of the rival manufacturer, and would purchase it in that belief, the court considers the use of such a mark fraudulent. *Franks* v. *Weaver*, 10 Beav. 297.

Apply that rule to the case before the court, and it is sufficient to control the decision; but the Chancellor went much further, and said, that if the goods of a manufacturer have, from the mark or device he has used, become known in the market by a particular name, he thought that the adoption by a rival trader of any mark which will cause his goods to bear the same name in the market, may be as much a violation of the rights of the owner as the actual copy of his device. *Seixo* v. *Provezende*, Law Rep. 1 Ch. 192, 196.

When the entire trade-mark is copied, the case is free of difficulty, as the rule is universal that the infringer is liable; but the question is, when may it be said that a trade-mark has been taken by another? Answers to that question are found in several cases, of which no one is more satisfactory than that given by the Master of the Rolls in a recent case. He says that a trade-mark to be taken need not be exactly copied, nor need it be copied with slight variations, but it must be *a substantial portion* of the trade-mark; to which he adds, that it has sometimes been called the material portion, but that, as he states, means the same thing, and he then remarks that it means the *essential portion* of the trade-mark, and finally concludes the subject by saying that " what the court has to satisfy itself of is that there has been an essential portion of the trade-mark used to designate goods of a similar description." *Singer Manufacturing Co.* v. *Wilson*, 2 Ch. D. 434, 443; Cod. Dig., sect. 342.

Argument to show that that rule is applicable to the case before the court is unnecessary, as the proposition is self-evident; and if so, it is impossible to see how any one can vote to affirm the judgment of the Circuit Court. Beyond all question, the letters " A. C. A." are the essential feature of the trade-mark adopted by the complainants, and the respondents admit in their answer and in argument that they use the same three letters in the same combination.

Complete imitation is not required by any of the well-considered cases. Instead of that, it is well settled that the proof of infringement is sufficient if it shows even a limited and partial imitation, provided the part taken is an essential portion of the symbol. None of the cases show that the whole must be taken, nor is it necessary to show that any one has in fact been deceived, if the imitation is such as to prove that it is calculated to deceive ordinary purchasers using ordinary caution. Proof of actual intent to defraud is not required, but it is sufficient if the court sees that the trade-mark of the complainant is simulated in such a manner as probably to deceive the customers and patrons of his trade and business. *Filley* v. *Fassett*, 44 Mo. 168, 178; *Coats* v. *Holbrook*, 2 Sandf. (N. Y.) Ch. 586, 626.

Courts of justice do not always use the same language in

defining what is the requisite similarity in the two trade-marks to entitle the complainant to relief, but they substantially concur that if it be such that the public may be led to believe while they buy the goods of the respondent that they are buying an article manufactured by the complainant, the proof of similarity is sufficient. *Hirst* v. *Denham*, Law Rep. 14 Eq. 542, 552.

For the purpose of establishing a case of infringement, it is not necessary to show that there has been the use of a mark in all respects corresponding with that which another person has acquired an exclusive right to use, if the resemblance is such as not only to show an intention to deceive, but also such as to be likely to make unwary purchasers suppose that they are purchasing the article sold by the party to whom the right to use the trade-mark belongs. *Wotherspoon* v. *Currie*, Law Rep. 5 Ap. Cas. 508–519; s. c. 27 L. T. N. s. 393.

Chancery courts will protect the property rights of a party in his trade-mark, and for its invasion the law will award compensation in damages. Legal redress will be accorded when it is shown that the symbol or device used by the wrong-doer is of such a character that by its resemblance to the established trade-mark of the complainant it will be liable to deceive the public and lead to the purchase of that which is not the manufacture of the proprietor, believing it to be his.

It is not necessary that the symbol or device should be a facsimile or a precise copy of the original trade-mark, or that it should be so close an imitation that the two cannot be easily distinguished by one familiar with the genuine device; but if the false or simulated one is only colorably different, or if the resemblance is such as may deceive a purchaser of ordinary caution, or if it is calculated to mislead the careless and unwary, and thus to injure the sale of the goods of the proprietor of the true device, the injured party is entitled to redress. *Colman* v. *Crump*, 70 N. Y. 573, 578; *Glenny* v. *Smith*, 11 Jur. N. s. 964.

Trade-marks usually exhibit some peculiar device, vignette, or symbol, in addition to the name of the party, which the proprietor had a perfect right to appropriate, and which, as well as the name, is intended as a declaration to the public

that the article is his property. Imitators frequently drop both the name and certain parts of the surroundings, and substitute their own name with a different vignette; but if the peculiar device is copied, and so copied as to manifest a design of misleading the public, the omission or variation ought to be wholly disregarded.

Proof of an intention to defraud is not required; but it is plain that the respondents acted with a design, and it would be absurd to suppose that they had no further object than the mere imitation of the trade-mark which they copied. On the contrary, it is obvious that they expected to gain an advantage in the sale of their goods by attaching their simulated device to fabrics resembling in appearance and quality the fabric of the complainants. Of course they meant to secure to their goods a preference in the market which they otherwise would not have commanded; and it is difficult, if not impossible, to see how any such advantage could be gained unless the simulated trade-mark would enable them to sell their fabrics as that of the injured party. *Amoskeag Manufacturing Co.* v. *Spear, supra; Fetridge* v. *Wells,* 13 How. (N. Y.) Pr. 386.

Proprietors of a trade-mark, in order to bring the same under the protection of a court of equity, are not obliged to prove that it has been copied in every particular by the wrong-doer. It is enough for them to show that the representations employed bear such resemblance to their symbol or device as to be calculated to mislead the public who are purchasers of the article, and to make it pass for the one sold by the true owner of the trade-mark. *Walton* v. *Crowley,* 3 Blatchf. 440–447.

Candid men cannot read the record in this case without being forced to the conclusion that the respondents took the essential feature of the complainants' trade-mark, which they had used for forty years to designate the fabric of ticking which they manufactured, and which had become known throughout the United States as the authorized symbol to indicate that description of goods; and if so, it follows to a demonstration that the decree of the Circuit Court should be reversed.