## SINGER MANUF'G CO. *v.* STANAGE.

*(Circuit Court, E. D. Missouri.* March, 1881.)

1. TRADE-MARK—PATENTED ARTICLE—SPECIFIC DESIGNATION.

Where a word indicates a patented machine of peculiar mechanism, such word cannot be protected as a trade-mark upon the expiration of the patent.

2. SAME—"SINGER" MACHINE.

Certain patented sewing machines were known as the "Singer" machines. *Held*, that the word "Singer" was not a trade-mark, and became common property upon the expiration of the patent.

In Equity.

*Taylor & Pollard*, for plaintiff.

*Marshall & Barclay*, for defendant.

TREAT, D. J. This is a suit for an alleged violation of plaintiff's trade-mark. It seems that the plaintiff has pursued its controversy on both sides of the Atlantic, generally with success. The decisions of the foreign and American courts have been cited and examined. While reference is made in many of them to actual or supposed patents, issued and expired, no one of said cases, except that by Judge Drummond, states with directness what should be the turning point in the controversy. The case of the plaintiff against Wilson (3 Appeal Cases, 376) turned more on questions of practice than on the rules by which the rights of the parties were to be ultimately determined. That case and others in England, and the great number of cases in American courts, (notably, *Manuf'g Co.* v. *Trainer*, 101 U. S. 51,) ought to make clear the rules controlling this litigation. It would be tedious and unprofitable to review the many authorities cited. In the case from the English house of lords, (*supra*,) and in the case (*supra*) from the United States supreme court, there were differing opinions on the merits. Each of the many cases cited has its distinctive peculiarities, and, while all courts agree that property interests in trade-marks should be protected, there is a strange diversity of reasoning as to the true basis on which such interests should rest.

It is not necessary for the solution of the rights of parties litigant in this suit to enter upon so wide a field of analysis or discussion. At the opening of the argument this court directed the attention of counsel to what seemed to be a matter of large moment, but as the pleadings and evidence had been prepared in the light of leading English and American cases, the cause progressed at great length, calling for the remark that despite these cases a large amount of irrelevant testimony was presented; or, rather, that while counsel had been diligent in their preparation, not knowing what views this court might entertain, much of the evidence seemed to apply rather to infringements of patents than a violation of trade-marks. Still, many of the leading cases have taken that course, to what seems to be a confusion of rights.

This case furnishes an apt illustration. The plaintiff and its predecessors had, in connection with others, through patents, a monopoly as to certain sewing machines, known as the "Singer" machines. When these patents expired every one had an equal right to make and vend such machines. If the patentees or their assignees could assert successfully an exclusive right to the name "Singer" as a trade-mark, they would practically extend the patent indefinitely. The peculiar machine which had become known to the public under that name during the life of the patents was so known as a specified article of manufacture, and at the expiration of the patent would still be known on the market by that designation, irrespective of the name of the special manufacturer. No one had an exclusive right to the use of the generic name. If one wished to acquire a trade-mark in connection therewith he could do so distinctively. The plaintiff accordingly adopted specific devices, including its own name, whereby its products could be distinguished. The defendant adopted a different device, with the name of his manufacturer, "Stewart," and advertised the sale sometimes of the "Stewart" machines, and sometimes of the "Stewart-Singer" machines, attaching his name as "late general manager of the Singer Manufacturing Co."

It is contended that, although he and others had an indu-

bitable right to manufacture and sell the "Singer" machines—that is, machines known as such in the market—so far as their mechanism is concerned, they had no right to advertise or sell them by their right names, with or without a prefix. How is it that the plaintiff corporation acquired a monopoly of the *name*, whereby it could exclude, after the expiration of the patent, all others from making or vending the machines under the only name known to the public?

A review of the many cases cited leads to the following conclusions:

*First.* That when a patented article is known in the market by any specific designation, whether of the name of the patentee or otherwise, every person, at the expiration of the patent, has a right to manufacture and vend the same under the designation thereof by which it was known to the public.

*Second.* That the original patentee or his assignees have no right to the exclusive use of said designation as a trademark. Their rights were under the patent, and expired with it.

*Third.* If a corporation or person wished to establish a trade-mark or name, indicative of its own special manufacture of such a machine or product, the right must grow up, just as all other rights of the kind are established—by use and acquiescence. Thus, as every one at the expiration of the patent had a clear right to manufacture and vend what was known as the "Singer" sewing-machine, the plaintiff could acquire no exclusive right to the name "Singer," but could by proper trade-mark appropriate to itself names or devices indicating its own manufacture of such machines.

*Fourth.* The plaintiff did adopt special names and devices to indicate what it put on the market as its manufacture, viz., "The Singer Manufacturing Company," imprinted on the shield and arm of the machine, etc. The defendant placed on its shield and arm the words, "The Henry Stewart's Manufacturing Co.," with another device. Now, as each corporation had an equal right to make and vend that class of machines known in the market as "Singer" machines, and as the defendant used neither the name nor device of the

plaintiff, there is no violation of the plaintiff's trade-mark or name. While the courts are prompt to protect the property rights of any skilled person in his trade-mark or name, whereby he may have in the market the benefit of his skill and reputation, they must also guard against every effort to secure a monopoly not arising therefrom. When a marketable product is publicly known or designated by a generic name, no one should be permitted to shut out all just competition by claiming the exclusive right to use that name. If there is a peculiar excellence, real or supposed, in his manufacture, he can establish by his trade-mark or name the right to protection against the piracy thereof; but he cannot go further and insist that, independent of his personal skill or manufacture, he can cover by his trade-mark or name whatever may properly distinguish the common article which every one has a right to make or vend.

*Fifth.* Inasmuch as the word "Singer" indicates a machine of peculiar mechanism, and every one has a right to make such a machine, the word "Singer" attached to such machines is common property.

*Sixth.* The distinctive names and devices of the plaintiff corporation were not used by the defendant, and no one of ordinary intelligence could suppose that the "Stewart" manufacture was the manufacture of the plaintiff. Each had its distinctive and detailed names and devices, so that there was no probability that the machine made by one would be mistaken for the manufacture of the other.

These views dispose of the case; yet it is important to remark that the plaintiff is seeking, after the expiration of one or more patents, to perpetuate a monopoly under the guise of a trade-mark. The propositions involved have undergone so much judicial investigation in transatlantic and cisatlantic courts that a summary disposal of the question may seem inadequate to the exigency of the case; yet each of said cases would show, if properly analyzed, that the general rule is admitted by all.

There are many technical objections interposed with respect to evidence offered; yet, giving the objector the largest bene-

fit therefrom, there still remains the clear fact that the plaintiff, even if its assignment covered the name as a trade-mark, (which is very doubtful), is seeking to create a monopoly for the practical extension of a patent beyond its legal term. The plaintiff has established no such right, nor has the defendant consequently violated any of plaintiff's rights.

The bill will, therefore, be dismissed at plaintiff's costs