# UNITED STATES PLAYING CARD COMPANY *v.* C. M. CLARK PUBLISHING COMPANY.

### TRADEMARKS; DESCRIPTIVE WORDS; WITNESSES.

1. The decision of the Patent Office that a given word is valid as a trademark must be accepted as conclusive, in an interference proceeding between rival applicants for registration of the word as a trademark.

2. Where a company manufacturing playing cards advertises in connection with its regular trademark, the ace of spades, one of its many brands of cards as "stage" cards, which are copyrighted, the face cards of each pack of which contain pictures of actors and actresses, the word "stage" is to be considered as a descriptive word, used for the purpose of indicating style, class, and grade; and the fact that the particular brand has been known as "stage" cards does not prove user of the name as a trademark to indicate origin and ownership.

3. The statement by a witness that a certain word was adopted and used by his company as a trademark is a mere conclusion, when based upon trade lists in evidence and testimony of former witnesses.

No. 430.   Patent Appeals.   Submitted May 21, 1907.   Decided December 11, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark interference proceeding.   *Affirmed.*

The facts are stated in the opinion.

*Mr. Fritz V. Briesen* for the appellant.

*Mr. A. H. Spencer* and *Mr. F. A. Spencer* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding involving rival claims to the registration of the word "stage" as a trademark for playing cards.

November 29, 1904, C. M. Clark Publishing Company registered the word, associated with the representation of a proscenium arch, with footlights in foreground, and scenery in the background, as used on cards of its manufacture. These cards are in packs like the common playing cards, but contain no representations or devices on their face enabling them to be used in the ordinary games with such cards. They are intended for use in playing a novel game called "Stage," and have nothing on their face but pictures of actors, singers, and theater buildings.

April 15, 1905, the United States Playing Card Company filed an application for the registration of the word "stage" as a trademark appropriated to playing cards of its manufacture, alleging that it had been used as such since August 1, 1896. On this the interference was declared with the C. M. Clark company.

Evidence was introduced on behalf of the United States company, consisting of two witnesses and certain exhibits of cards and printed matter. The C. M. Clark company took no testimony, and relied on its registered date. The Examiner of Interferences decided in favor of the United States company, but on appeal to the Commissioner his decision was reversed. Appeal has been prosecuted from the Commissioner's decision.

The discussion has taken a wider range than we think is warranted by the issue and the evidence relating thereto. The validity of the word "stage" as a trademark appropriated to playing cards has been settled, for all of the purposes of the interference proceeding, by the action of the Patent Office in registering it on the prior application of the appellee, and declaring the interference upon that of the appellant. Nor is the right of the appellant to have one general trademark for all cards of its manufacture, and a special one for each class or style there-

of, one that need be considered. The single question is whether the appellant has shown by its testimony such earlier use of the word "stage" as a trademark for cards as to entitle it to an award of priority over the registered claimant.

The printed exhibits of the appellant consist of circulars or trade lists issued at regular periods from and after January 1, 1897. These contain lists of about one hundred different styles of playing cards, under distinct names or brands, with wholesale prices set opposite, and arranged in classes designated as A, B, C, D.

The first entry in Class D reads as follows:

"65x. The Stage Playing Cards, gold edges .....$72.00.

"Professional Stars, Actors and Actresses of the Stage. The most attractive edition of playing cards ever issued. Beautiful Court card designs, showing portraits of world-renowned celebrities of the stage. Handsome backs in gold and colors; finest linen stock; doubled enameled and highly finished, and put up in handsome, gold-stamped cases."

On the title page of each circular or list appears a conspicuous mark consisting of the ace of spades bearing a conventional figure of Columbia, together with the printed word "Trademark" thereunder. There is nothing whatever to indicate the use of "stage" as an additional trademark. On the same page is printed the statement that " 'Bicycle' and other brands of U. S. and 'National' playing cards (nearly one thousand different kinds) received the highest awards at the World's Fair, Chicago." An exhibit pack of the stage playing cards is contained in a removable paper box, which has printed on one side, in large gilt letters, the following:

"No. 65x. The Stage Playing Cards. Gold edges. Copyrighted 1896 by the U. S. Playing Card Co., Cincinnati, U. S. A."

The pack is inclosed in a pasted paper wrapper with the same imprint, and on the reverse side is a label showing the trademark ace before described. The face cards of the pack show pictures of different actors and actresses, with their respective names.

The superintendent of the American News Company, a large

purchaser of cards, testified that he had ordered these "stage" cards for eight years or more, from the price lists, and that they were known to the trade as "stage" playing cards. The appellant alone manufactured them at the time. That this particular brand of cards was known as "stage" cards does not prove user of the name as a trademark to indicate origin and ownership. The same thing would be equally true of all the other brands described in the trade lists, among which those designated as "Circus," "Vanity Fair," "Hustling Joe," etc., contain representative pictures on their faces. The testimony of the secretary of appellant contains the broad statement that the word "stage" was adopted and used as a trademark; but this amounts to nothing more than a conclusion founded on what is disclosed in the trade lists and the testimony of the former witness. All that the testimony actually shows is that the real trademark, adopted, used, and advertised as such, is the ace of spades as before described, which appeared on every circular and trade list, and on every pack of cards of whatever style. This trademark is a symbol that by long exclusive use, and probable registration, indicated the origin and ownership of every style and grade of appellant's cards.

We think with the Commissioner, that the descriptive words, including "stage," which appear on the particular packs of cards showing the pictures of actors and other performers on the stage, were for the purpose of indicating style, class, and grade. Words so used do not constitute a trademark. *Amoskeag Mfg. Co.* v. *Trainer,* 101 U. S. 51, 54, 25 L. ed. 993, 994; *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460, 463, 37 L. ed. 1144, 1146, 14 Sup. Ct. Rep. 151; *Burton* v. *Stratton,* 12 Fed. 696, 700.

Having begun the manufacture of this novel style of card, the appellant affixed to it its long-established trademark, and undertook to secure additional protection, not by adopting a new and special trademark, but by securing a copyright for the cards as prints or pictorial illustrations. This copyright, as we have seen, is advertised upon each pack of the cards containing the actors' pictures, in large gilt letters.

We are of the opinion that the Commissioner was right, and his decision is affirmed.

The clerk will certify this decision to the Commissioner of Patents as directed by the law.                    *Affirmed.*