PHOTOPLAY PUB. CO. v. LA VERNE PUB. CO., Inc., et al.

SAME v. EASTLACK et al.

(District Court, E. D. Pennsylvania. November 5, 1919.)

Nos. 1749, 1597.

TRADE-MARKS AND TRADE-NAMES ⨪73(1)—UNFAIR COMPETITION; TITLES OF TRADE PUBLICATIONS.

The first user of the word "Photoplay" in the title of a publication devoted to the art suggested by the word *held* not to have the exclusive right to such use, but to be entitled to protection only in so far as the word had come to be associated with and to designate its publication, against the imposition of other publications on purchasers as its own.

In Equity. Suits by the Photoplay Publishing Company against the La Verne Publishing Company, Incorporated, and the Central Press Company, Incorporated, and against Frank T. Eastlack and others. Decrees for defendants.

Robert W. Archbald, of Philadelphia, Pa., and MacDonald De Witt, of New York City, for plaintiff.

Charles S. Wesley and Wm. M. Montgomery, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The legal merits, or lack of merit, of this case, depends upon a distinction which is not a little difficult to state. In any business activity, the one who has created, or is the first to discover, a special field which he occupies alone or is striving to cover, resents as a wrong the intrusion of any one else upon his chosen field. This feeling is so general, if not universal, that it must have some basis in the principles of what is called natural justice. The first comer feels that he has as much right to what he has created or discovered as the patentee has to his invention. This feeling, being common to all, is shared by publishers. Such a claim of right, however,

the law, for obvious reasons, cannot sanction.    On the other hand, when the first publication has made a name for itself, and is known and is in demand by that name, and the second publication reaches out to take the custom or patronage, which is claimed by the first publisher, by falsely imposing upon such patrons the second publication as the first, the law pronounces this false personation to be a wrong and affords the first publisher protection and redress.    We get this part of the thought of the suggested distinction clearly by a contrast between a patent or other exclusive proprietary right granted by statutory law and the common-law right recognized in the doctrine of unfair competition.    The whole thought is really presented by this contrast, but there is another part of it which is not made so clearly to appear.

Among the divisions commonly made of the broad field covered by all publications, there is the special field covered by what are called "trade publications."    They are emphatically "trade journals."    They devote themselves to some special interest, class, trade, profession, art, or business.    Sometimes (although this is not usual) some one has created this field.    Some one, however, is often the first to discover and to seek to occupy it by a publication.    If he can appropriate it, he has something of great value.    He seeks to get possession of it by giving his publication a name which will identify it with the field it covers.    Others are not slow to see that the field is a rich one, and hence conflicts such as that in the present case.    The first publisher feels that he has the right to exclude altogether.    He does not make this broad claim, however, but restricts it to a right to prevent any other publication from using a name which will accomplish what his selection of a name was intended to accomplish—identify, as we have said, the publication with the field.    Even this he knows to be too bold a claim to be upheld, if plainly set forth; so he tries to bring it within the application of the doctrine of unfair competition, and get under this as a mantle of protection.    It is thus seen that the determination of his rights depends upon whether or not the doctrine has application to the fact situation which he presents.

When any new art comes into existence it sooner or later comes to be known by a name, word, or phrase, which in turn becomes a part of the common speech of the people.    Some little time often elapses before the word or phrase is adopted into our language.    Sometimes these words are tried, used for a while, and are then dropped and a wholly new word finds acceptance.    The origin of such words, although they may be of recent origin, is almost always obscure, and the subsequent search for it is interesting, but usually fruitless.    The development of the art brings into its terminology additional words to express shades of meaning necessitated by divisions and distinctions.    Sometimes the words are coined by some one connected with the early developments of the art, and are fastened upon it by persistent iteration and reiteration through advertising or other means.    Sometimes a word used in another art is borrowed from the old art and transferred to the new.    Sometimes the borrowing is from another language.    Whenever it happens that the word which comes to be incorporated

in the common speech has been coined by one who was the first to enter upon the new commercial field which the new art has brought into existence, the author of the word claims the right to the commercial proprietorship of all which the word has come to include.

Many concrete illustrations may be found of the correctness of these general statements. The words "bicycle" and "motorcycle" used in one art; "automobile," "limousine," "sedan," "jitney," etc., used in another; "kodak," "kryptoc," and scores of other words used in still other arts—afford us illustrations. People are to-day feeling around for words which may be used in a now rapidly developing art and the old familiar term of "flying machine," with which we have been familiar since the days of Darius Green, is meeting rivals in "aeroplane" and other words. The military science and art is crowded with words which illustrate what goes on in the expansion of the vocabulary of common speech. Indeed, this is true of every science, art, profession, business, and trade.

The plaintiff in this case sets up something of some such claim to the exclusive occupancy of the special field which belongs to what may be broadly called the moving picture art, or to at least that part of it to which the designation "photoplay" attaches. Plaintiff would doubtless repudiate a claim of this scope, but in a very substantial sense this is his claim. "Photoplay," he claims, is a coined word. It is what is called a proprietary word. It has become, it is true, a part of common speech, and means an art in which a great many people are interested. When he calls his publication a Photoplay Journal, Magazine, News, or by any combination of title words, in which the word "photoplay" appears, it means that the publication is devoted to matters of interest to people who are interested in that special branch of the picture play art. Any one asking for that kind of a publication will ask for it by using that word. In consequence, if he can monopolize the use of that word, he will, in a very substantial sense, monopolize the business of publications devoted to that art. Just what his rights are, and how far his claim of right has the support of the law, depends, as we have said, upon the fact situation out of which his claim arises.

The following fact findings and statements of the principles of law applicable to these fact situations, respectively, will disclose the grounds of fact and law upon which the present ruling is made.

1. The plaintiff made use before the defendant of the word "Photoplay" as part of the title of his publication, and its publication had become associated in the minds of a large number of people as one devoted to the art suggested by that word. It is further found as a fact that the word "photoplay" has come to be in common speech the designation of the art above indicated, and the appropriate and indeed the only word of our language which by and of itself designates the special branch of the motion picture art to which it is applied. The right to the exclusive use of the word "Photoplay," as part of the title of any publication of the general character of the publications of plaintiff and of defendant, is a right of very great commercial value.

The conclusion of law found is, however, that no such right is conferred by or arises out of the fact finding made, and that plaintiff does not have a legal right to the exclusive use of the word "Photoplay" in its title, and that the defendant has the right to its use within the limits next stated.

2. Plaintiff has the right to the use of the title adopted for its publication, and to its exclusive use, so far as that title has come to be associated with and to designate by name its particular publication, and is further entitled to protection against another publication being imposed intentionally or otherwise upon purchasers as plaintiff's publication.

The fact finding is made, however, that there has been no purpose or intention on the part of defendant to deceive, and in fact no deception of, intending purchasers into the belief that the publication of the defendant was that of the plaintiff. The purpose and value of the use of the word "Photoplay" as part of the title of each of these publications was to inform intending purchasers that the publication was devoted to the interests of the art indicated by that word, and the defendant intended by the use made of the word "Photoplay" to share in, and has in fact shared in, the patronage of those who wished to buy such a publication. The use of the word, however, has not been with the intent and purpose of palming off the publication of the defendant for that of the plaintiff, nor has defendant's use of the word "Photoplay" been such as that there would be any reasonable expectation that any one knowing of and wishing to buy the publication of the plaintiff would be led into mistaking the one publication for the other.

3. The defendant is entitled to a decree dismissing the plaintiff's bill, with costs.

The foregoing conclusions of law have support in all the cases ruling the question now presented. The following citations of some of them are taken from the briefs submitted: Gannert v. Rupert, 127 Fed. 962, 62 C. C. A. 594; Social v. Howard (C. C.) 60 Fed. 270; Suburban Press v. Phila. Suburban Pub. Co., 18 Pa. Dist. 997; Selchow v. Baker, 93 N. Y. 59, 45 Am. Rep. 169; Lawrence v. Tennessee, 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Standard Paint Co. v. Rubberoid, 224 Fed. 695, 140 C. C. A. 235; Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550; Amoskeag Mdg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993; Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 538; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144.

A formal decree in accordance with this opinion may be submitted, but no decree is made until such formal decree has been made and filed.