(C.D. 2698)

F. H. KAYSING *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 2, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before Rao and Ford, Judges

Rao, Chief Judge: The instant cases, which have been consolidated for purposes of trial, were submitted for decision upon the official samples of the imported merchandise introduced into evidence as plaintiff's collective exhibit 1 and the following agreed facts:

\* \* \* that the "Esso" ovals under protest as represented by Exhibit 1, are not toy decalcomanias, and they are not transparent; that they are lithographically printed in five printings not in ceramic colors; that they are not printed in whole or part in metal leaf, but they are backed with metal leaf; and that they are neither embossed, nor die cut.

The Esso "ovals," hereinabove adverted to, are approximately 2 inches in length and 1½ inches in width. They have a glossy, white surface, upon which are printed the words

IMPERIAL
E S S O
SERVICE

within a blue border, and the metal leaf backing is of silver color.

This merchandise was classified within the provisions of paragraph 1406 of the Tariff Act of 1930, as modified by the General Agreement

on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for transparencies in not more than five printings, apparently, as stated by counsel for the Government at the time of trial, by virtue of the similitude provisions of paragraph 1559 of said act, as amended by the Customs Simplification Act of 1954, and, accordingly, was assessed with duty at the rate of 15 per centum ad valorem.

It is the claim of plaintiff that these articles are labels, within the purview of said paragraph 1406, as modified by the General Agreement on Tariffs and Trade, *supra*, and supplemented by Presidential proclamation, 83 Treas. Dec. 51, T.D. 51834, which are dutiable at the rate of 21 cents per pound, or are decalcomanias in said paragraph 1406, as modified by said General Agreement on Tariffs and Trade, at the rate of 32½ cents per pound.

The tariff provisions in issue recite the following:

Paragraph 1406, as modified by T.D. 51802—

Pictures, calendars, cards, placards, and other articles (not including labels, flaps, and cigar bands), composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material (except * * *), not specially provided for:

    Transparencies, printed lithographically or otherwise:

        In not more than five printings (bronze printing to be counted as two printings)_____15% ad val.

      *      *      *      *      *      *      *

    Decalcomanias (except toy decalcomanias and decalcomanias in ceramic colors):

    *      *      *      *      *      *      *

        If backed with metal leaf_____ 32½¢ per lb.

Paragraph 1406, as modified and supplemented, *supra*—

Labels, flaps, and cigar bands, composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material, but not printed in whole or in part in metal leaf and not specially provided for (except labels and flaps not exceeding ten square inches cutting size in dimensions, if embossed or die-cut):

    Printed in less than eight colors (bronze printing to be counted as two colors):

        Labels and flaps_____ 21¢ per lb.

Paragraph 1559, as amended, *supra*—

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles

which it most resembles in respect of the materials of which it is composed.

Relying upon the sample "as a potent witness," plaintiff contends that the article in issue is not a transparency for the simple reason that it is not transparent; that, since it is "designed to be affixed as an adhesive label to an article that is to be identified with a well-known oil company," it is a label, and, moreover, that it is a decalcomania label since it "is designed to be transferred to an article that is to be identified with 'Esso.'"

Counsel for the defendant rests upon the proposition well founded in customs jurisprudence that the action of the collector in classifying imported merchandise is presumptively correct, and that the burden of a party seeking to overcome that presumption is twofold, namely, to establish not only that the collector's action was erroneous, but that the merchandise is properly dutiable under some other provision of the law than that invoked by the collector. *McKesson & Robbins, Inc.* v. *United States*, 27 CCPA 157, C.A.D. 77; *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, C.A.D. 735.

In the present instance, it is contended that plaintiff has failed to establish his claimed classifications by competent, probative evidence, and that, therefore, and regardless of whether or not the merchandise at bar consists of transparencies, the presumption of correctness of the collector's classification has not been overcome. *United States, etc.* v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809. Accordingly, it is necessary to consider whether the subject items have been shown to be labels or decalcomanias within the intendment of this paragraph.

An extended discussion of the meaning of the term "label" may be found in the case of *Gibson Art Co.* v. *United States*, 5 Ct. Cust. Appls. 385, T.D. 34876, wherein the court concluded that small paper disks or Christmas seals were not labels by reference to the following definitions then current (1914) :

> *Label.*—A slip of paper or any other material, bearing a name, title, address, or the like, affixed to something to indicate its nature, contents, ownership, destination, or other particulars.—*Century.*

> *Label.*—A narrow slip of silk, paper, etc., affixed to anything, denoting its contents, ownership, or the like; as, the label of a bottle or a package.—*Webster.*

> *Label.*—A slip or tag of paper or other material affixed to something and bearing an inscription to indicate its character, ownership, or destination.—*Standard.*

> *Label.*—A small piece of paper, or other material, containing a name, title, or description, and affixed to anything to indicate its nature or contents.—*Worcester.*

*Label.*—A slip of paper, cardboard, metal, etc., attached or intended to be attached to an object and bearing its name, description, or destination. (The chief current sense.)—*Oxford.*

*Label.*—(A French word, now represented by *lambeau*, possibly a variant; it is of obscure origin and may be connected with a Teutonic word appearing in the English "lap," a flap or fold), a slip, ticket, or card of paper, metal, or other material, attached to an object, such as a parcel, bottle, etc., and containing a name, address, description, or other information for the purpose of identification. * * *—*Encyclopaedia Britannica.*

*Label.*—* * * (c) The usual meaning now, a strip or small piece of paper, sheet metal, cloth, or other material, attached to a package to describe it in some way, as to tell its nature, the maker, the weight, destination, or any other information concerning it. * * *—*International Encyclopaedia.*

*Label.*—A placard or slip attached to an object to denote its contents, destination, or ownership; a slip of paper or any other material bearing a name, title, address, or the like, affixed to something to indicate its nature, contents, ownership, destination, or other particulars; a small piece of paper, or other material, containing the name, title, or description, and affixed to indicate its nature or contents; a narrow slip of silk, paper, parchment, etc., affixed to anything denoting its contents, ownership, and the like.—*Cyclopedia of Law and Procedure.*

A trade-mark may, sometimes, it is true, in form, serve as a label, but it differs from a mere label in such cases in that it is not confined to a designation of the article to which it is attached, but by its words or design is a symbol or device which, affixed to a product of one's manufacture, distinguishes it from articles of the same general nature manufactured or sold by others, thus securing to the producer the benefits of any increased sale by reason of any peculiar excellence he may have given it. Manufacturing Co. *v.* Trainer (101 U.S. 51, 53). A mere label is not intended to accomplish any such purpose, but only to indicate the article contained in the bottle, package, or box to which it is affixed.—*Mr. Justice Field in Higgins* v. *Keuffel* (140 U.S. 428, 433).

The authorities just cited agree with remarkable unanimity upon the definition of the term in question, and accordingly the name is held to signify a strip or small piece of paper, sheet metal, cloth, or other material attached to a package or article to describe it in some way, as by telling its nature, the name of the maker, its weight, destination, or some other information concerning it.

The passing years are not noteworthy for any marked variation in the common concept of what a label is, as is evidenced by the relatively constant definitions contained in more modern lexicons. See, for example, the following definition in the 1963 edition of Webster's Third New International Dictionary:

* * * 5 a: a slip (as of paper, parchment, cloth, leather, metal) that is inscribed and affixed to something for identification, direction,

or description * * * b: written, printed, or graphic matter attached to or accompanying an article or inscribed on its container or wrapper identifying the contents or giving other appropriate information (as the destination of a parcel, the use of a medicine, the title of a book) * * *.

The significant elements which customarily distinguish labels from other paper articles are, therefore, the capacity to be attached to some other thing and the ability to afford some means of identification for that thing.

The lexicons and other standard authorities are equally explicit as to the meaning of the word "decalcomania." Prior to the time this term was incorporated into the Tariff Act of 1930, Congress was apprised of its scope by the following comment in the 1929 Summary of Tariff Information on the Tariff Act of 1922 compiled by the United States Tariff Commission and printed for the use of the Committee on Ways and Means of the House of Representatives:

Decalcomanias are transfer pictures, designs, or other decorations. They are printed either on simplex paper (par. 1305) or duplex paper (par. 1635), for transfer to pottery, glassware, machinery, furniture, advertising novelties, etc. Ceramic prints are composed of metallic colors which fuse with the pottery to which transferred when fired.

In 1948, according to Summaries of Tariff Information then published, the term was defined as follows:

Decalcomanias are pictures, designs, or lettering, in single or multiple colors, lithographed on paper coated with starch and gum from which the imprint may be transferred to a permanent surface. * * *

The Dictionary of Paper, second edition, a volume published under the auspices and direction of the American Paper and Pulp Association in 1951, provides this description:

A process of transferring printed designs to porcelain, wood, glass, marble, etc. It consists usually in gumming the paper or other film bearing the colored picture onto the object and then removing the paper with warm water, the colored picture remaining.

And in Webster's Third New International Dictionary, 1963, decalcomania is defined as follows:

* * * 1: the art or process of transferring pictures and designs typically from specially prepared paper to china, glass, or marble and permanently fixing them thereto 2 a: a picture or design prepared for transfer by decalcomania b: a paper on which designs are printed for transfer printing.

Notwithstanding the very well-settled principle that, where the classification of imported merchandise is in issue, a sample may and often does constitute convincing proof of its character and composition (*United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 CCPA 26, C.A.D. 120; *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676),

it seems clear that, in the instant case, we are asked to assume much more than the physical aspects of the exhibit proclaim. There is nothing so obvious about the subject merchandise, as illustrated by exhibit 1, that would indicate the purpose for which it was intended or the method by which it is to be used, from which its character as a label or a decalcomania within the foregoing definitions might be determined; nor have the stipulated facts supplied the essentials upon which any affirmative conclusions to either effect might be based.

There is no evidence before us to support the statement of counsel for the plaintiff that the subject ovals are to be backed with an adhesive and affixed to articles which they would thereby identify as products of a well-known oil company. Indeed, it is not even clear from the wording of the ovals, which purport to describe a type of service, that these items were designed for or intended for use in connection with a product. Moreover, the fact that these articles are backed with silver-colored metal leaf would tend to negative the suggestion that they are to be coated with an adhesive substance for the purpose of being attached to some other product.

It would also be left to conjecture only to support a finding that these ovals were so composed as to be susceptible of having their surface design imparted to another surface by the transfer process hereinabove described in the absence of competent proof of how or under what circumstances the articles at bar are processed or used.

We are here asked to substitute the *ipse dixit* of counsel for the plaintiff that exhibit 1 is either a label or a decalcomania for proof of its composition or intended uses. It has not yet been held that such asseverations are acceptable alternatives for such proof.

We are in complete agreement with counsel for defendant that the instant record is inadequate to sustain the burden of proof imposed upon a plaintiff in a case of this kind. All claims in these protests are, therefore, overruled without necessarily affirming the collector's classification.

Judgment will be entered accordingly.