Schneider *v.* Williams.

SAMUEL SCHNEIDER, SIMON REICHMAN and FREDERICK WERNECKE

*v.*

JOHN R. WILLIAMS.

1. The jurisdiction of a court of equity to give relief against the violation of a trade-mark, rests, not upon the ground that the defendant is committing a fraud on the public, but entirely on the ground that the defendant is violating a property right of the complainant.

2. Three things are requisite to the acquisition of a title to a trade-mark. *First,* the person desiring to acquire title must adopt some mark not in use to distinguish goods, of the same class or kind, already on the market, belonging to another trader; *second,* he must apply his mark to some article of traffic; and *third,* he must put his article, marked with his mark, on the market.

3. Mere adoption of a mark, and a public declaration that the mark, so adopted, will be used to distinguish goods, to be put on the market at a future time, create no right. No title arises until the thing is actually on the market, marked with the particular mark.

On hearing on demurrer.

*Mr. T. H. S. Van Roden* and *Mr. J. Frank Fort,* for the demurrant.

*Mr. Henry Young,* for the complainants.

VAN FLEET, V. C.

This action is brought by three persons as members of a voluntary association called the Cigarmakers' International Union of America.

The complainants sue on behalf of their fellow members, as well as themselves, alleging that the association consists of over ten thousand members, many of whom are unknown to them, but that if they knew the names of all, their number is so great that it would be impracticable to join them all as parties complainant. The action is brought to protect a right, which, it is alleged, is held in common by all the members of the association.

Schneider *v.* Williams.

The substance of the case made by the bill may be stated as follows : The Cigarmakers' International Union is a voluntary association, composed of practical cigarmakers. It was formed for purposes of mutual protection, advantage and benefit. The bill says it was formed " for the purpose of elevating the material, moral and intellectual welfare of the craft." Its membership now embraces a large majority of all the skilled cigarmakers of the United States. It requires of each of its members faithful service to his employer, and, in consequence of the superiority of the workmanship of its members, they are employed by a great many persons, engaged in the manufacture of cigars, at wages largely in excess of the wages paid to other cigarmakers, who are not members of the association. In order to compensate employers for the high rate of wages they were required to pay members of the association, and for the purpose of further inducing employers to employ its members, and also for the purpose of increasing the sales of cigars made by its members, the association, in September, 1880, adopted a trade-mark, consisting of a label, which any manufacturer of cigars, employing members of the association, is authorized to place on a box containing cigars made by a member of the association, and which label certifies on its face, that the cigars contained in the box to which it is affixed, were " made by a first-class workman, a member of the Cigarmakers' International Union of America, an organization opposed to inferior rat-shop, coolie, prison or filthy tenement-house workmanship." This label, at the time of its adoption, had not been previously used in this country or elsewhere, and since its adoption it has been the exclusive property of the association. As the label is a guarantee that the cigars contained in the box to which it is attached, have been manufactured by a skillful workman, and are not coolie, prison or tenement-house work, the sale of cigars thus marked, has, since the adoption of the label, largely increased, and they now command a higher price in the market than cigars not thus distinguished, and so the exclusive right to use the label is now a very valuable right. The label has been counterfeited. The defendant, who is a manufacturer of cigars, and a wholesale and retail dealer therein,

Schneider *v.* Williams.

but not a member of the association, nor an employee of its members, has obtained possession of a number of the counterfeit labels, and is now engaged in placing cigars, not made by members of the association, but marked with the counterfeit label, on the market, in violation of the rights of the complainants, and to the great injury of the public. The complainants ask for a decree restraining the defendant from using their trade-mark, or any imitation of it.

The defendant demurs. He denies that the facts above set forth show any cause of action. Taking the averments made in the bill to be true, it is manifest that nothing can be said in defence or even extenuation of the defendant's conduct, in its moral aspects, for, whether the complainants have the legal right they claim or not, the facts stated in the bill show beyond dispute, that the defendant is conducting his business, in such manner, as to deceive and cheat all who deal with him, by representing that to be true which he knows to be false. He is seeking to get gain by the use of a counterfeit token. But this court has no power to correct moral delinquencies, or redress mere moral wrongs. The complainants can have no relief at the hands of this court, unless their bill shows both a clear property right and an invasion of that right by the defendant. Unless their bill shows that they have property in the label or mark, which they say is the exclusive property of their association, they have no case. "Imposition on the public," in the words of Lord Westbury, "occasioned by one man selling his goods as the goods of another, cannot be the ground of private action or suit. In the language of Lord Thurlow, in *Webster* v. *Webster, 3 Swanst. 490, note*, 'The fraud upon the public is no ground for the plaintiff's coming into court.' It is, indeed, true, that, unless the mark used by the defendant be applied by him to the same kind of goods as the goods of the plaintiff, and be in itself such that it may be and is mistaken in the market for the trade-mark of the plaintiff, the court cannot interfere, because there is no invasion of the plaintiff's right; and thus the mistake of the buyers in the market, under which they, in fact, take the defendant's goods as the goods of the plaintiff, that is to say, imposition on the public,

becomes the test of the property in the trade-mark having been invaded, and not the ground on which the court rests its jurisdiction." *Leather Cloth Co.* v. *American Leather Cloth Co., 4 DeG., J. & S. 137, 141.* The rule, as thus stated, I understand to be the established doctrine now in force on this subject both in this country and in England.

The question to be considered is, Does the bill show a property right in the complainants and their fellow-members in the trade-mark in question? This is, however, preceded by another, which is, How may property in a trade-mark, or a right to a trade-mark, be acquired? It would seem to be settled beyond question, that there can be no such thing as a trade-mark distinct from and unconnected with a vendible commodity. As the words themselves import, to make the thing selected or adopted answer the purposes of a trade-mark, it must be so used as to mark or distinguish something which is the subject of traffic—something which is bought and sold. It can have no existence as property or a thing distinct from and wholly unconnected with an article of traffic, for in that condition, while it might be the subject of traffic itself, it would be simply as a mark or name, and not as the distinguishing mark of some other article of traffic. It is only when it is affixed to or associated with some vendible commodity, so as to distinguish that particular commodity from others of the same class or kind, that it is possible for it to possess the essential quality of a trade-mark. The right in question was defined by Lord Westbury, in *Hall* v. *Barrows, 4 DeG., J. & S. 150, 158,* to be "the exclusive right to the use of some name or symbol as applied to a particular manufacture or vendible commodity." And Mr. Justice Clifford, in a dissenting opinion, in *Manufacturing Co.* v. *Trainer, 101 U. S. 51, 57,* said: "Property in a trade-mark is acquired by the original application to some species of merchandise or manufacture of a symbol or device not in actual use to designate articles of the same kind or class, * * * the rule being, that he who first adopts such a trade-mark acquires the right to its exclusive use in connection with the particular class of merchandise to which its use has been applied by himself or his agents." And Mr. High, in his

Schneider *v.* Williams.

treatise on the Law of Injunctions, says: "A trade-mark is a particular sign or symbol, which, by exclusive use, becomes recognized as the distinguishing mark of the owner's goods, and for the protection of which the aid of equity may be properly invoked." *High on Inj. 1063.*

The principle that no person can acquire a right to a trade-mark, except he put merchandise or a vendible commodity on the market, marked or distinguished by his particular mark, has been repeatedly affirmed by judges of the very highest distinction. The cases so adjudging are numerous. I shall not cite all which have been examined. Lord Westbury, in *Leather Cloth Co.* v. *American Leather Cloth Co., 4 De G., J. & S. 137, 142,* said: "It is correct to say that there is no exclusive ownership of the symbols which constitute a trade-mark, apart from the use or application of them, but the word trade-mark is the designation of these marks or symbols as and when applied to a vendible commodity, and the exclusive right to make such user or application is rightly called property." The same distinguished judge, in *McAndrew* v. *Bassett, 4 De G., J. & S. 380, 386,* said: "Property in the word for all purposes cannot exist, but property in that word, as applied by way of stamp upon a particular vendible article, * * * does exist the moment the article goes into the market so stamped, and there obtains acceptance and reputation, whereby the stamp gets currency as an indication of a superior quality, or some other circumstance which renders the article so stamped acceptable to the public." The same views, in substance, were expressed by Lord Kingsdown, in *Leather Cloth Co.* v. *American Leather Cloth Co., 11 H. of L. Cas. 523, 538;* by Lord Langdale, in *Perry* v. *Truefitt, 6 Beav. 66;* by Lord Cranworth, in *Farina* v. *Silverlock, 6 De G., M. & G. 214;* by Sir William Page Wood, in *Ainsworth* v. *Walmsley, L. R. (1 Eq.) 518, 524;* by Lord Justice Cairns, in *Maxwell* v. *Hogg, L. R. (2 Ch. App.) 307, 314,* and by Vice-Chancellor Bacon, in *Hirst* v. *Denham, L. R. (14 Eq.) 542, 549.* Mr. Kerr and Mr. Joyce, in their works on the Law of Injunctions, both adopt Lord Westbury's statement respecting the means by which a right to a trade-mark must be acquired, as expressing,

in the best form, the established law on this subject. *Kerr on Inj. 475 ; Joyce on Inj. 176 § 23.*

From this statement of the law, it would appear to be entirely clear, that a person who desires to acquire a right to a trademark must do three things, each of which is indispensably requisite to the acquisition of the right. *First,* he must select or adopt some mark or sign not in use to distinguish goods of the same class or kind already on the market, belonging to another trader ; *second,* he must apply his mark to some article of traffic ; and *third,* he must put his article, marked with his mark, on the market. Mere adoption of a mark or sign, and a public declaration, by advertisement or otherwise, that a person will, at a subsequent time, put a particular thing on the market, marked or distinguished in a certain way, create no right. Until the thing is actually on the market, marked by the particular mark of the person intending to acquire a title, no property right in the mark arises. *Lawson* v. *Bank of London, 18 C. B. 84 ; Maxwell* v. *Hogg, supra.*

Tested by the principle above stated, it would appear to be so clear as to be beyond all controversy, that the complainants have not acquired such a title to the mark in question as will enable them to maintain this action. Without stopping to consider whether it is possible for a voluntary association, not composed of traders, but of skilled workmen, who put nothing on the market but their skill as mechanics, to acquire title to a trademark, it is sufficient for present purposes to say, that the case attempted to be made by the bill is fatally defective in an important particular. The defect is this : The bill does not show that the complainants have applied their mark or label to a vendible commodity, of which they are the owners, or in which they trade, and that they have put such commodity, marked with their mark, on the market. Such application and user constitute, according to the established law on this subject, the only foundation on which a title can rest. Without them it is impossible to acquire a title. While an antecedent user, suffi-·cient to give the commodity a general notoriety and reputation in the market, is not indispensable to the acquisition of a title,

yet, it is settled, that, until the commodity is actually on the market, marked with the mark to which title is asserted, no title will arise. *Kerr on Inj. 475.*

The question raised by the demurrer in this case seems to have been the subject of some diversity of judicial opinion. In several instances injunctions have been granted, in similar cases, by local courts. The writs in these cases seem, however, to have been awarded on general notions of justice, and to protect the public against the frauds the defendants were committing, rather than on the ground that the plaintiffs had shown, according to the settled law on the subject, that they had a valid title to a trademark.

When the supreme court of Minnesota were required to decide the question, the court divided, two judges being of opinion that the bill or complaint showed no title, while the other two were of opinion that it did. No opinions were written, at least none are reported. *Allen* v. *McCarthy, 37 Minn. 349.* A case recently decided by the court of appeals of New York seems to have involved a question somewhat similar to that under consideration. What the special facts of the case were does not very distinctly appear. There were no findings of facts. But it does appear, that the superior court of the city of New York had enjoined the defendant from using certain labels, or imitations thereof, upon boxes containing cigars manufactured and sold by him. The order granting the injunction was, on appeal, affirmed by the general term, and also by the court of appeals. The complaint in that case alleged that the plaintiffs were "cigar-makers," and the court of appeals, in stating the reasons why the judgment of the court below should be affirmed, said : "A material fact, bearing upon the right of the plaintiffs to final relief, appears to be the force and effect to be ascribed to the allegation that the plaintiffs are 'cigarmakers,' and whether that phrase imports an ownership of the cigars thus made." The defendant denied that any such import could be fairly attributed to that phrase, but the court said that the issue raised on this point was one that should not be determined on a preliminary hearing, but should be reserved until the final hearing.

*Strasser* v. *Moonelis, 108 N. Y. 611.* The form in which the court stated the issue to be determined on final hearing, would seem to leave no doubt that it was of opinion, that ownership of the article, which the mark was used to distinguish, was essential to the acquisition, by the plaintiffs, of a title to the mark as a trade-mark. The bill, in the case under consideration, is free from all obscurity as to the sense in which the word "cigar-makers" is used. It is used to indicate simply that the complainants are skilled workmen, and nothing more. It is not pretended that there is the least hint in the bill that the complainants set up a title to a trade-mark as manufacturers or dealers in cigars.

The demurrer must be sustained, with costs.