WILLIAM T. BLACKWELL *v.* WESLEY A. WRIGHT.

Every manufacturer has the unquestionable right to distinguish the goods that he manufactures and sells, by a peculiar label, symbol or trade mark, and no other person has a right to adopt his label or trade mark, or one so like his as to lead the public to suppose the article to which it is affixed, is the manufacture of the inventor. But before the owner of the trade mark can invoke the power of the Courts to prevent an infringement thereof, he must show a clear legal title to the trade mark, and a plain violation of it.

If it appear that the trade mark, alleged to be an imitation, though in some respect resembling that of the plaintiff, would not probably deceive the ordinary mass of purchasers, an injunction will not be granted.

CIVIL ACTION, tried before *Kerr, J.,* at Fall Term, 1874, ALA-MANCE Superior Court.

The action was originally begun in the county of Orange, and upon affidavit of the defendant removed to the county of Alamance. The plaintiff alleged : That he is a manufacturer of smoking tobacco at Durham, and as such has owned and used since the month of April, 1870, a trade mark, in order to distinguish the smoking tobacco made by him from other such tobacco. The trade mark so used by him, containing the words, " Genuine Durham (Trade Mark) Smoking Tobacco, Manufactured only by William T. Blackwell, (successor to J. R. Green & Co.,) Durham, N. C.," was annexed as a part of the complaint, and is fully set out and described in the opinion of the Court.

The plaintiff farther alleged that the trade mark was purchased by him of J. R. Green, now deceased. From the skill displayed by the plaintiff and his predecessor in manufacturing said tobacco distinguished by said trade mark, a large and profitable business has grown up in the hands of the plaintiff. The defendant has infringed upon the rights of the plaintiff by making and using a trade mark substantially the same as that of the plaintiff and by encouraging others to do likewise.

In this way the defendant has caused great injury to the plaintiff, not only by selling an inferior article of tobacco as and for genuine Durham smoking tobacco, but also by taking possession of a part of the market for such tobacco, and so cutting short the sales thereof by the plaintiff.

For a second cause of action, the plaintiff alleged that the defendant -well knowing the premises and intending to injure the plaintiff and to cause the public to believe that the plaintiff's above said claim to such trade mark was unfounded, as this plaintiff is informed and believes, has maliciously published and declared in this and several other States, that the exclusive claim of the plaintiff to sell "Genuine Durham Smoking Tobacco" was unfounded; and has threatened to prosecute persons, agents and consignees of the plaintiff in case they should sell tobacco marked with the above said trade mark That great pecuniary damage has thereby been occasioned to the plaintiff. The plaintiff therefore demanded judgment for five thousand dollars damages, and for an injunction against the defendant using such trade mark or one substantially the same, as well as against his slandering the title of the plaintiff.

The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action :

1. In that it does not allege that the plaintiff has at any time purchased the interest of the persons composing the company with J. R. Green, or was at any time a partner with J. R. Green, and has entitled himself as a successor to J. R. Green & Co. to the sole manufacture of " Genuine Durham Smoking Tobacco ;"

2. That the said complaint does not state facts sufficient to show that the exclusive claim of the plaintiff to sell " Genuine Durham Smoking Tobacco " is well founded, and that the defendant has slandered the title of the plaintiff in stating the fact that the plaintiff did not possess such exclusive claim.

The case coming on to be heard upon the demurrer, it was adjudged by the Court that the demurrer be overruled, and

that the defendant, his agents and employees be particularly enjoined and restrained from using the trade mark which is alleged in the plaintiff's complaint to have been used by the defendant, or any trade mark substantially the same as that of the plaintiff, or the trade mark alleged in the complaint to have been used by the defendant, and also that the defendant, his agents, servants and employees be particularly enjoined from slandering the title of said plaintiff to his said trade mark as set forth in his complaint.

It was also ordered that W. A. Albright, Clerk of Alamance Superior Court, be appointed a Commissioner to state an account of the profits which the defendant has made by the use of said trade mark, and that the plaintiff recover cost of this action.

From this judgment the defendant appealed. All other facts necessary to an understanding of the case, as decided here, are stated in the opinion of the Court.

*Jones & Jones* and *J. W. Graham*, for appellant.
*Merrimon, Fuller & Ashe*, contra.

- BYNUM, J. Unless the inventor is protected by a patent obtained out of the Patent Office of the United States, he has no exclusive right to make and vend his own invention, but any other person has the right to make and vend the same article, or one precisely like it. But he has no right to manufacture and sell it as the article made by the inventor. Every manufacturer has the unquestionable right to distinguish the goods that he manufactures and sells by a peculiar mark or device, so that they may be known as his in the market, and he may thus secure the profits which their superior reputation as his may be the means of gaining. If, therefore, the inventor or manufacturer adopts a label, symbol or trade mark, to distinguish the article he thus manufactures and sells, no other person has the right to adopt his label or trade mark, or one so like his as to induce the public to suppose the article to

which it is affixed, is the manufacture of the inventor. This rule is grounded upon a two-fold reason: 1st, that the public may be protected from being imposed upon by a spurious or inferior article, as an imitation or counterfeit almost always is; and 2d, that the inventor may have the exclusive benefit of the reputation which his skill has given to the article made by him. When one, therefore, adopts a symbol or device, and affixes it to the goods he thus manufactures and puts upon the market, the law will throw its protection around the trade mark thus affixed, as his property and a thing of value. And it would seem to be immaterial whether an infringing trade mark is adopted by fraud or mistake, for the injury is the same. When an article, not of his manufacture, is sold with the mark or device affixed, which he has adopted to distinguish his own goods, a damage results to him. His label indicates to his customers that the article is made or sold by him, or by his authority, and he will be protected against any who attempts to pirate upon the good will of his friends or customers by using such sign without his authority. American Trade Mark cases, 142, 72, 87.

But before the owner of a trade mark can thus call upon the Courts, he must show not only that he has a clear legal right to the trade mark, but that there has been a plain violation of it; and where a violation is alleged, the true enquiry is, whether the mark of the defendant is so assimilated to that of the plaintiff as to deceive purchasers. And it will make no difference whether the party designed to mislead the public or whether the symbol adopted was calculated to deceive. But if it appear that the trade mark alleged to be imitated, though resembling the complainant's in some respects, would not probably deceive the ordinary mass of purchasers, an injunction will not be granted. An imitation is colorable, and will be enjoined, which requires a careful inspection to distinguish its mark and appearance from that of the manufacture imitated. Apply these general principles to our case.

The plaintiff alleges that he is a manufacturer of smoking

tobacco, at Durham, North Carolina, and as such has owned and used a trade mark to distinguish his from other smoking tobacco; that the trade mark, so used by him, is as follows: "Genuine Durham Smoking Tobacco, manufactured only by W. T. Blackwell, (successor to J. R. Green & Co.,) Durham, N. C.," with the picture of a bull in the centre of the label, over which are the words ("trade mark"). He alleges that the defendant has infringed upon this, his trade mark, by adopting and using one substantially the same, whereby he is enabled to sell an inferior article of smoking tobacco, as and for the plaintiff's genuine article, and has thus encroached upon and injured his custom. He then proceeds to set out and describe the assimilating trade mark of the defendant, to-wit, that it is "on glazed paper of the same color and general appearance with that of the plaintiff;" and that the words, "the original Durham smoking tobacco," are printed thereon, and on the said label are the words, "manufactured by W. A. Wright," above which words is the head of some bovine animal, which the plaintiff alleges to be a Durham bull. The The labels containing these trade marks of both parties, are attached as a part of the case.

We are unable to see from the pleadings, or upon inspection of these labels, how or wherein the trade mark of the plaintiff is infringed upon, by that of the defendant. The plaintiff does not allege in his complaint that the color and appearance of the paper label is any part of his trade mark, and had he done so, it is far from clear that one can have a trade mark in a color or general appearance of paper, a thing in universal use. Nor can the word "Durham," the name of the town where both parties are doing business, be exclusively appropriated as a trade mark. The word "genuine" is unlike the word "original," used by the defendant, and the words "smoking tobacco," a thing in general use by that name, of course is not pretended to be the subject of appropriation. The names of the manufacturers printed on the labels are entirely unlike, and the figure of an entire animal upon the label

of the plaintiff, and of the head only, of an animal upon that of the defendant, so far from misleading by the similarity, would rather tend to distinguish the one from the other. Certainly, in connection with the many other dissimilarities of the two labels, the head of an ox or bull cannot be held to be a colorable imitation of the trade mark of the plaintiff. So, after thus examining the several parts, composing these trade marks in detail, if we put the parts together and examine each trade mark as a whole, what colorable or descriptive assimilation is there, between the words "genuine Durham (trade mark) smoking tobacco; manufactured only by W. T. Blackwell, (successor to J. R. Green & Co.,") and the "original Durham smoking tobacco manufactured by W. A. Wright"? Those who purchase by a trade mark, of course must examine it, and as soon as that is done in our case, there is no ground for being misled. We must assume that dealers and consumers of such a commodity have ordinary intelligence and adopt ordinary precaution against imposition and fraud. To adopt a different rule, would be productive of the greatest confusion and mischief in an age remarkable beyond all that has preceded it, for the multiplication of its inventions and discoveries and the infinitely diversified forms of its trades and manufactures.

To our mind the plaintiff does not disclose a case which entitles him to injunctive relief or to an action for damages. The term "original Durham smoking tobacco" seems a fair set off to "genuine Durham smoking tobacco;" neither term so much indicating any peculiar excellence of the stuff, as a usual trick of trade, by which competitors in business cry up their own wares or cry down their rivals.

There is error. The demurrer is sustained and the action dismissed.

PER CURIAM.                    Judgment reversed.