TELEPHONE MANUFACTURING CO. OF SUMTER, S. C., v. THE SUMTER TELEPHONE MANUFACTURING CO.

INJUNCTION—CORPORATIONS—NAME.—A manufacturing corporation cannot acquire such property in the name of a town or place where its goods are manufactured as to entitle it to an injunction restraining other manufacturers of same place and making same goods, from using that name to designate the place of manufacture.

Before GARY, J., Sumter, February, 1901.    Affirmed.

Action by Telephone Manufacturing Co. of Sumter, S. C., against The Sumter Telephone Manufacturing Co. From Circuit decree, defendant appeals on following exceptions:

"1. Because he did not sustain plaintiff's fourth exception to the master's report and overrule the master's tenth finding of fact, as follows, to wit: 'That the defendants, Chas. T. Mason and F. C. Manning, as officers of the plaintiff company, and while in its employ, did not give their time and attention to the business of the defendant company, and did not as such officers and employees neglect to perform and discharge their duties to the plaintiff company; but, on the contrary, did faithfully give all proper and necessary attention to its business. That they did not procure the employees of the plaintiff company to subscribe or to purchase the stock of the defendant company, nor to leave the employ of the plaintiff company for that of the defendant company. That they never entered into any contract, understanding or agreement with the said Peter E. Blow and Hiram J. Glover, jr., or either of them, to increase the capital stock of the plaintiff company, or to enlarge its plant, or to purchase a site

for a new plant, or to erect a new factory building for and on behalf of the plaintiff company. That the said Chas. T. Mason and F. C. Manning, neither by themselves or with other parties, conspired to wreck the business of the plaintiff company.'

"2. Because he did not sustain plaintiff's fifth exception to the master's report and find 'that the defendants, Chas. T. Mason and F. C. Manning, while officers of the plaintiff company, and drawing their salaries as full compensation for their services, did give their time and attention to the organization of the defendant corporation, and to the designing and erection of buildings therefor, and to the selection and purchase of the machinery and tools therefor, and that they did neglect their duty to the plaintiff company, and that they did procure the employees of the plaintiff company to purchase the stock of the defendant company and to leave the employment of the plaintiff company.'

"3. Because he did not sustain plaintiff's seventh exception to the master's report and find 'that the defendants, Chas. T. Mason and F. C. Manning, entered into a secret agreement and understanding, while they were the paid officers of the plaintiff company, for the organization of a new 'company or corporation,' which was intended to be a rival of plaintiff company in the very line of business in which the plaintiff company was engaged, and that their purpose 'was to exclude therefrom Peter E. Blow, one of the largest stockholders and the president of the plaintiff corporation, and that they knew, or should have known, that the result of the organization of such new company would be to the serious injury of the business of the plaintiff corporation.'

"4. Because he did not sustain plaintiff's eighth exception to the master's report and overrule the master's finding of fact, 'That in selecting its corporate name, and making prominent therein the word "Sumter," the defendant company intended to establish its permanent location for the manufacture of telephones in the city of Sumter, * * * and that said company desired to permanently identify itself by name

with the name of the city of its location and with no purpose of interfering in any manner with the name or business of the plaintiff company;' and did not find that the defendants, Chas. T. Mason and F. C. Manning, and the other parties associated with them in the organization of the defendant company, knew that because of the small size of the city of Sumter, the plaintiff company had become known to the trade as 'The Sumter Telephone Manufacturing Company,' and that when they took the name of 'The Sumter Telephone Manufacturing Company,' they knew that they would create confusion and would injuriously affect the business of the plaintiff company.

"5. Because he did not sustain plaintiff's ninth exception to the master's report and overrule the master's finding of fact, 'That the plaintiff company had not used the words of its corporate name, to wit: 'of Sumter, S. C.,' but that in its business transactions, in its corporate seal, in its certificates of stock, in its sign over its factory door, in its letter heads, in its envelopes, in its signatures to business letters, in its shipping tags and in its business correspondence, covering a period of three years, the plaintiff company only used the name 'Telephone Manufacturing Company,' and did not use the words of its corporate name, 'of Sumter, S. C.;' and did not find 'that, it being the only telephone manufacturing company located at Sumter, S. C., it was not necessary for its identity to use the whole of the name in informal correspondence and such matters, but that wherever its name was so used, it was invariably used in connection with the name of Sumter, S. C., as the place of location of such company.'

"6. Because he did not sustain plaintiff's tenth exception to the master's report and did not find that the plaintiff company was known to the trade as 'The Sumter Telephone Manufacturing Company.'

"7. Because he did not sustain the plaintiff's eleventh exception to the master's report and overrule the master's finding of fact, 'That the alleged similarity of the corporate

names of the plaintiff company and defendant company has
not deceived the public.    That by the exercise of due care,
no confusion need occur in the mail or other business affairs
of the two companies by reason of the alleged similarity of
corporate names,' and did not find, 'that the name taken by
the defendant company was substantially identical with that
of the corporate name of the plaintiff company, and that
great confusion has resulted in the mail and other business
affairs of the plaintiff company by reason of the substantial
similarity of the corporate names of the plaintiff and defend-
ant companies, and that such similarity has deceived the
public.' ·

"8. Because he did not sustain plaintiff's twelfth exception
to the master's report and overrule the master's finding,
'That the plaintiff company has not suffered any loss, injury
or damage by reason of the alleged similarity of corporate
names, nor by reason of any of the facts alleged in the com-
plaint herein;' and did not find, 'that, by reason of the simi-
larity of names, the defendant company, a rival corporation
of the plaintiff, has been able to get information as to the
plaintiff's business, has repeatedly received correspondence
intended for the plaintiff and repeatedly opened the same,
and has thus been enabled to compete with the plaintiff for
business which rightfully belonged to the plaintiff; and be-
cause he should have found that the defendant company has
repeatedly received checks and other remittances intended
for the plaintiff, and that the plaintiff company has been
repeatedly charged with sums of money due by the defendant
company, and this confusion has resulted in great and irre-
parable loss and damage to the plaintiff.'

"9. Because he did not sustain plaintiff's thirteenth excep-
tion to the master's report and did not overrule the master's
finding of fact to the effect that the officers of the plaintiff
company knew of the use by the said defendant company of
its corporate name, in all of its business affairs, correspond-
ence and general transactions, and that no objection thereto
was ever made by the plaintiff company or any of its officers,

nor any complaint made of the adoption or use of the said corporate name until the commencement of this action, and did not find that the officers of the plaintiff corporation, other than the said Chas. T. Mason and F. C. Manning, did not know of the purpose of the persons organizing the defendant corporation to use its corporate name until after the charter had been granted to it by the secretary of State of the State of South Carolina, and that they did not know or appreciate the serious inconvenience and injury that would result to the plaintiff corporation on account of the similarity of said names until after the confusion in mail and other such occurrences had happened, and did not find that they had taken prompt steps to prevent a continuance thereof and to compel the defendant to change its name.

"10. Because while his Honor found, 'there is no doubt of the fact that confusion has occurred in the mail of these two companies,' nevertheless he proceeded to propound the question, 'Does that afford sufficient ground for the interference of the court of equity,' and then concluded, 'The rule is that if such confusion can be avoided by the use of ordinary care, the Courts will not interfere,' when it is respectfully submitted that the only question is whether there is such substantial similarity of names as is calculated to deceive the ordinary mass of persons dealing with such corporations.

"11. Because his Honor should have concluded that the question of similarity of names was a question to be tried upon the record itself and determined by the Court upon the inspection of the names, and did not conclude that the name of the defendant corporation, 'The Sumter Telephone Manufacturing Company,' was substantially a statement that it was the Telephone Manufacturing Company of Sumter, S. C.

"12. Because his Honor concluded that 'If confusion could be avoided by the use of ordinary care, the Courts will not interfere, and the master has also found that the public has not been misled by reason of the similarity of the cor-

porate names of the two companies.    If this finding is true,
then it seems to me there should be no interference by a
court of equity; for, as is said in Cook on Corporations
(note to sec. 15), "the ground on which courts of equity
afford relief in this class of cases is the injury to the party
aggrieved and the imposition upon the public by causing
them to think that the goods of one man or firm are the pro-
ducts of another;" ' thereby erring in holding that the plain-
tiff was not entitled to relief unless it was shown that the
public had exercised due care and had still been deceived;
whereas, it is respectfully submitted, the rule is that such a
similarity of names as is calculated to mislead the ordinary
mass of the public is a violation of the plaintiff's rights which
should be remedied by a court of equity.

"13.  Because his Honor concluded that the jurisdiction of
the Court to grant relief in this case rested upon fraud on the
part of the defendants and upon the principle that equity
would not allow one to sell his own goods under the pretense
that they are the goods of another; whereas, he should have
concluded that under the statutes of South Carolina, a cor-
porate name is a fixed right, a part of the corporate existence
of a corporation, and that the violation of such fixed right,
whether based upon fraud or not, is the subject of relief in
the Courts of this State, and that a court of equity will inter-
vene to enjoin a second corporation from making use of a
substantially similar name, without reference to fraud on the
part of the second corporation.

"14.  Because his Honor concluded that 'the same prin-
ciples apply in cases of the similarity of corporate names
and those of the similarity of trade marks, each being entitled
to protection under identically the same rules and principles.
The name of a corporation, from necessity, is its trade
mark;' and then concluded that the question of validity of
plaintiff's corporate name could be made in this case; and
that because of the use of the word 'Sumter' in its name, such
name could not be protected by the Courts of this State;
whereas, he should have held that a corporate name being

granted to a corporation by act of the legislature, or by the secretary of State under the authority of the legislature, becomes an established legal right, and that the principles governing an action for the impairment of such established rights are only the same as those governing an action for the impairment of an established trade mark.

"15. Because his Honor concluded that the use of the words or term 'Sumter, S. C.,' in plaintiff's corporate name, did not entitle it to the exclusive use of its corporate name, but that the defendant or any other person could make use of a substantially similar name embracing the term 'Sumter, S. C.'

"16. Because his Honor, upon the master's finding of fact that the plaintiff's business and reputation is based, not upon its corporate name, but upon its registered trade mark, to wit: 'Imperial,' based the conclusion that plaintiff had lost its right to the exclusive use of its name; whereas, he should have concluded only that even if plaintiff's telephones were known to the trade as 'Imperial,' it still had the right to its corporate existence, and to transact all of its business under and by its corporate name, which had been granted to it by its charter from the State of South Carolina, and that it had a right to protect itself from the violation of such corporate name by the defendant company.

"17. Because his Honor did not find that if the plaintiff had not in all instances used the term 'Sumter, S. C.,' in its corporate name, such was due to the actions of the defendants, Chas. T. Mason and F. C. Manning, who were the managing officers of the corporation within the State of South Carolina and constituted one-half of its board of directors.

"18. Because his Honor did not conclude that the plaintiff was entitled to the relief demanded in the complaint, and did not adjudge that the defendant be permanently enjoined from the use of such name."

*Messrs. Haynsworth & Haynsworth* and *W. H. Lyles,*

for appellants.   The former no citations.   The latter cites:
*Directors are trustees of the corporation:* 8 Brown's C. P.,
42; 4 DeS., 713, 504; 4 Rich., 165; 2 Cook on Corp., 1262;
53 Cent. Law Jour., 42.   *As to what the corporate name is,
and plaintiff's right to an injunction:* 1 Deady, 609; 92 Mo.,
355; 37 Conn., 278; 60 N. Y. Supp., 302; 17 C. C. A., 582;
20 *Id.,* 160; 27 *Id.,* 357.

*Messrs. Lee & Moise,* contra, cite: *As to corporate names:*
42 S. C., 511.   *If mistakes can be avoided by due care, no
right of action lies:* 2 High on Inj., secs. 1066, 1068, 1090;
73 N. C., 310; 32 Fed. R., 165; 23 Am. R., 25; 2 Sand. Ch.,
622; 17 Barb., 608.   *Upon what principles Courts will as-
sume jurisdiction of actions of this kind:* 2 High on Inj.,
sec. 1064; 1 Cook on Corp., sec. 15; 1 Beach on Priv. Corp.,
sec. 373; 26 Ency., 327; 15 Am. R., 522; Bingham's Prin-
ciples of Eq., 411; 80 U. S., 311; 4 Ency., 206; 73 N. C.,
310; 27 Fed. R., 402; 54 Ill., 439; 92 Mo., 355; 60 N. Y.
Supp., 190; 150 U. S., 460; 81 Ky., 73; 72 Conn., 646; 117
Pa., 401; 42 Wis., 118; 35 C. C. A., 237; 31 *Id.,* 55; 179
U. S., 19, 666; 28 N. Y. Sup., 388; 15 Abb. N. C., 152; 20
C. C. A., 27; 139 U. S., 540; 82 Me., 302; 24 On., 240;
45 Fed. R., 212; 12 Fed. R., 696; 13 Abb. Pr., 389; 18
How. Pr., 64; 155 Ill., 127; 25 Barb., 416; 75 Pa., 467; 175
Mass., 85; 50 N. Y. Supp., 437; 32 Fed. R., 153.

April 1, 1902.   The opinion of the Court was deliv-
ered by

MR. JUSTICE POPE.   This action was commenced on the
third day of May, 1900.   The nature of the issues raised by
the pleadings can be the more readily and thoroughly under-
stood by embodying the pleadings in this opinion.   The
complaint, omitting the caption, was as follows:

"The plaintiff, complaining of the above named defend-
ants, alleges:

"1. That the plaintiff is a corporation organized under
the laws of the State of South Carolina.

"2. That the defendant, the Sumter Telephone Manufacturing Company, is a corporation organized under the laws of the State of South Carolina.

"3. That in 1896 and the early part of 1897, the defendant, Chas. T. Mason, was engaged in the city of Sumter and said State in the manufacture of telephone and electrical supplies, conducting his business under the trade name of 'The Mason Electrical Works of Sumter, S. C.'

"4. That the Southern Brass and Iron Company, of Knoxville, Tenn., of which Peter E. Blow was president, was engaged in the handling and selling of telephones and other electrical supplies in all parts of the country as one of its branches of business, and during the latter part of 1896 and the early part of 1897, commenced to handle and sell the telephones and other electrical supplies manufactured by the Mason Electrical Works of Sumter, S. C., and at that time the defendant, F. C. Manning, was employed as traveling salesman of the Southern Brass and Iron Company, of Knoxville, Tenn., above referred to, and was especially entrusted by said company with the business of soliciting purchasers · for the Mason telephones and electrical supplies; and during said employment, reported to the said Peter E. Blow, that the defendant, Chas. T. Mason, had stated to him that he, the said Chas. T. Mason, was limited in the amount of capital available for the conducting of said business, and did not himself possess the business capacity which would qualify him for the successful development of the said enterprise on a large scale, and that he desired to get some one of business capacity and capital to go into the enterprise with him, and that he thought it could be made a success.

"5. That, induced by said representation, the said Peter E. Blow came to Sumter, S. C., and conferred with the defendant, Chas. T. Mason, which conference resulted in an agreement between the defendant, Chas. T. Mason, and the said Peter E. Blow, that they should form a corporation with a capital stock of $5,000, which amount the said Chas. T. Mason represented would be sufficient for the development

21—63

of the enterprise above referred to, it being agreed that each of the said parties should take one-half of the said amount of stock, and that the corporation so organized should purchase from the defendant, Chas. T. Mason, all of the manufactured stock and raw material on hand, and should take a lease of the buildings and machinery occupied and used by him for a term of years; and in pursuance of said agreement the plaintiff corporation was duly organized under the laws of the State of South Carolina under the corporate name of Telephone Manufacturing Company of Sumter, S. C.; the defendants, Chas. T. Mason and F. C. Manning, and the said Peter Blow and Hiram J. Grover, jr., being elected the board of directors of said corporation, and the full amount of said capital stock was subscribed and paid into said company, and the contract with reference to the purchase of the stock and material and the lease of said building and machinery was carried into execution.

"6. That by the further terms of said agreement, the said Chas. T. Mason was to be elected general manager and electrical expert of said company, and was to have full charge of the manufacturing department of said corporation's business, and to be charged with the duty of providing, at the expense of the corporation, all materials, tools, machinery and labor connected with said department; and for the first year to be paid a salary of $100 per month, the amount of said salary being fixed at his own suggestion; and the said Peter E. Blow was to be elected president of said corporation and to have charge of the financial part thereof, but was to manage the same from his office in the city of Knoxville, Tenn., upon such information as was to be derived by him from the other officers and employees of the said corporation; his salary, at his own suggestion, being fixed at the sum of $50 per month; and it was understood and agreed that the said Chas. T. Mason, as such general manager and electrical expert, should exert his energies and exercise his inventive genius for the successful operation of the said department and for the improvement of the telephones and

other electrical apparatus to be manufactured by said corporation, it being well known that the said Chas. T. Mason was possessed of considerable inventive genius, and his reputation as such being a part of the consideration which moved the said Peter E. Blow to enter into the said agreement; and upon the organization of said corporation, at the first meeting of the board of directors, held at the office of the said corporation in the city of Sumter, S. C., the said Peter E. Blow was elected president, and the said Chas. T. Mason was elected general manager and electrical expert of said corporation, with the duties it had been understood and agreed upon should be imposed upon the said respective officers, and the salaries of the said defendant, Chas. T. Mason, and the said Peter E. Blow were paid during the first year at the rate fixed upon in the said agreement; and after the first year the salary of the defendant, Chas. T. Mason, at his solicitation and by mutual agreement between the said Peter E. Blow and Chas. T. Mason, but without formal action of the board of directors, was raised to the sum of $2,000 per annum, and the salary of the said Peter E. Blow remaining at the sum of $50 per month.

"7. That the business of the said corporation so organized, prospered and developed so rapidly that it soon became apparent that the capital of the corporation was not sufficient to enable it to conveniently handle its business, and the said Peter E. Blow furnished the necessary funds to carry on the same, and has continued to do so up to the present time, the profits of the corporation from the said business steadily increasing from year to year, but went, by mutual agreement, to the increase of the available funds of the corporation for the handling of its said business.

"8. That at the time of the organization of the said corporation, the defendant, F. C. Manning, was employed as traveling agent of said corporation for the sale of its telephone and other electrical appliances, a part of his duties being to gather information for said corporation as to the names and addresses of the different telephone exchanges

throughout the country, and the style and character of the telephone switchboards and other electrical appliances used by them, and all other information with reference to the business needs of business corporations who might become customers for the product of the said corporation; like information being gained and reported to the corporation by its other representatives, and the information so reported to the corporation being recorded in one of the books of said corporation, the same being of great value as a book of reference for the future use of said corporation, the said F. C. Manning and all other traveling salesmen or agents being paid stated salaries and all expenses by the corporation.

"9. That some time after the organization of said corporation, the said defendant, F. C. Manning, was elected the vice-president thereof, and his duties as such traveling agent were continued, but his salary was, from year to year, increased, the corporation still continuing to pay all of his traveling expenses in addition to his salary paid him from year to year.

"10. That at the annual meeting of said corporation held during the month of June, 1899, the said defendants, C. T. Mason and F. C. Manning, were re-elected to their respective offices and, until recently, continued to hold said offices and to be charged with the duties thereof.

"11. That the factory of said corporation being located at the said city of Sumter, in the said State, and being the only factory of its kind in the south, became known among other manufacturers and exchanges and purchasers of telephones and other electrical appliances, as the Sumter Company, and a large proportion of the orders, correspondence and inquiries sent to said company were addressed to it there as 'The Sumter Telephone Company,' or 'The Sumter Telephone Manufacturing Company,' and this fact was well known to both of the defendants, C. T. Mason and F. C. Manning, both of them having access to the mail of said corporation, and being charged with duties with reference to the filling of orders and the answering of inquiries, etc.

"12. That during the period in which the said defendant, Chas. T. Mason, held the office of electrical expert, and in pursuance of his duties as such, much of his time was given to the invention of improvements to the telephones and other electrical appliances manufactured by the said corporation, and he made use of the mechanics and other employees, and the tools and machinery of said corporation, for the development of his ideas, and the preparation of models necessary for the procuring of patents therefor, and did procure several of such patents, the said corporation paying all expenses thereof, including the fees of the officers of the government, and the attorneys procuring the same, and the said patents being taken out, however, in the name of the said Chas. T. Mason, as, under the patent law, a patent cannot be taken out in the name of a corporation. One of such patents, that for a telephone hook, the said C. T. Mason duly transferred to the said corporation, but others he has failed to transfer, assigning as his reason therefor, that while the corporation was entitled to the use thereof, his experience had been such as to cause him to think that it was best that it should be retained in his individual name, in case the corporation itself should for any cause dissolve.

"13. That besides the inventions so patented at the expense of the corporation, the said defendant, Chas. T. Mason, while in the employment of the company and receiving a salary as its electrical expert, invented an electrical drop and central energy system for a telephone exchange, and a transmitter and other electrical appliances, the particulars of which are not fully known to the plaintiff corporation or its present officers; the said Chas. T. Mason, during said period, making use of the other employees of the corporation, and of its tools and material, for the drawings and models for the development of his ideas, and the procuring of patents for said inventions, but without the knowledge of the said corporation, applying for said patents in his name and his own expense, as to the fees necessary therefor. .

"14. That during the summer of the year 1899, the busi-

ness of the said corporation having grown to such large dimensions, it became apparent that it could not be managed to the greatest advantage or further increased without an enlargement of its factory buildings and an increase of its machinery; but the site upon which the leased buildings stood were not suitable for the erection of larger buildings, and to make such increase it was necessary to increase the capital of said corporation, and, with that end in view, the said Peter E. Blow, president of the corporation, having come out to the city of Sumter, numerous consultations were held amongst the directors of said corporation, being the same directors above named as having been elected at the first meeting thereof, they having been re-elected from year to year, the said parties being not only all the members of the board of directors, but the only stockholders of the said corporation; and in such consultation, the defendant, C. T. Mason, informed said Peter E. Blow, as such president, that he had obtained an option on a certain lot or parcel of land situate in the city of Sumter, and said State, fronting west on Harvin street and extending east to the right of way of the Atlantic Coast Line Railroad; bounded north by lots of Kingman, Haynsworth and others, and south by lot of Brand, at the price of $3,600, which he thought eminently suitable for the erection of such buildings as were then contemplated; and the said Peter E. Blow and the defendant, Chas. T. Mason, inspected said lot, and said Peter E. Blow, as president, concurred with the said defendant, Chas. T. Mason, in the conclusion that the said lot was eminently suited for the purposes of said corporation; and at such conferences, the defendants, Chas. T. Mason and F. C. Manning, in the presence of the said H. J. Grover, jr., and Peter E. Blow, figured upon the character and the costs of the buildings and machinery desired for such enlargement, including the price of the lot aforesaid, and it was then ascertained that the value of the manufactured product, raw material, tools and machinery, already on hand and belonging to said corporation, was about $30,000, not taking into consid-

eration the value of the patents belonging to said corporation, or its good will or business already established, and the conclusion was unanimously reached that the capital stock of said corporation should be increased to $60,000, $30,000 thereof to be taken as the value of the property aforesaid already on hand, and the other $30,000 to be subscribed for in cash to meet the expenses of purchasing the said lot and the requisite machinery, and the erection of the building on said lot, and for the necessary working capital of said corporation; and it was agreed at said conferences that the said Peter E. Blow would take $15,000 of said increase of capital stock and the said Chas. T. Mason should have the privilege of taking the remainder either for himself or for his friends, the whole amount of said $30,000 to be paid in cash.

"15. That during the period of such consultations, alleged in the preceding paragraph, the president of the plaintiff corporation, the said Peter E. Blow, consulted with R. M. Wallace, Esq., president of the First National Bank of Sumter, S. C., the depository of said corporation, with reference to the value of said lot, and the advisability of purchasing the same at the price stated, and fully explained to him the condition and character of the business which had been conducted by the plaintiff corporation, and the plans of the said Peter E. Blow and the other stockholders for the enlargement of said business and the increase of the capital stock of the said corporation, but did not state to him the amount of increase that was proposed, as it had not then been fully determined on; and that said R. M. Wallace advised the purchase of said lot, and expressed his desire to take a part of the increase of the capital stock of the said corporation if it was satisfactory to the old stockholders; and the said Peter E. Blow stated to him that he would want his full share of one-half of the stock, but very likely he could get some from the defendant, Chas. T. Mason.

"16. That it having been fully determined at these conferences by all of the stockholders of the said company that the aforesaid lot and necessary machinery for the increase

should be purchased and the buildings erected, and that the
capital stock should be increased to $60,000, and the said
Peter E. Blow left the city of Sumter early in the month of
August, and returned to his home in Knoxville, in the State
of Tennessee, fully expecting that the said defendants, Chas.
T. Mason and F. C. Manning, would go ahead with all the
preparations for the carrying out of those plans, and promis-
ing that he would return at any time upon telegraphic com-
munication from either of said parties; but, contrary to his
expectations, no information reached him by telegraph or by
mail as to what progress was making in the said prepara-
tions, whereupon, the said Peter E. Blow wrote to the de-
fendant, Chas. T. Mason, asking for information as to
progress that was making in the said preparations, which
communication remained unanswered for several days; the
said Peter E. Blow wrote a second time making inquiry
about the matter, to which letter the said defendant, Chas.
T. Mason, replied, that, owing to the difficulty of procuring
wire of a certain size, he did not know whether it was ad-
visable to build a new factory or not; to which the said Peter
E. Blow, president, replied that the question of wire was a
small matter, and that he would write to Mr. Grover, the
secretary, in regard to the matter.   Not receiving any reply
to the said letter, the said Peter E. Blow, president, wrote
again to the said Chas. T. Mason, requesting an answer to
his letter with regard to the building of the new factory, and
shortly after received a letter in reply from said defendant,
Chas. T. Mason, in which he said that if the said Peter E.
Blow, president, would not again mention the building of a
new factory to him, he, the said Chas. T. Mason, would not
mention it to him, and the correspondence upon the subject
thereupon ceased; and a short while afterwards the said
Peter E. Blow, president, learned, by a publication in a news-
paper in the city of Sumter, that the defendant corporation
had been organized under the name of the Sumter Telephone
Manufacturing Company, with R. M. Wallace, above
named, as president, Chas. T. Mason, vice-president and

general manager, F. C. Manning, secretary, and one C. G. Rowland, as treasurer; and the said Peter E. Blow learned from private sources that the said corporation, so organized, had purchased the lot which the plaintiff company had agreed to purchase through the said Chas. T. Mason, as above stated, and was going to erect a building thereon for the manufacture and sale of telephones and other electrical appliances; and the said Peter E. Blow, president of the plaintiff corporation, at once realized that it meant the organization of a new company in competition with the plaintiff company.

"17. That the plaintiff is informed and believes that at the time efforts were making to raise the capital stock necessary to organize the defendant corporation, the defendants, Chas. T. Mason and F. C. Manning, made use of the information which they, as officers of the plaintiff corporation, had as to the character and value of its business, and made statements from the books of the plaintiff corporation to induce subscribers to the capital stock of the defendant corporation, and that, subsequent to the organization of the defendant corporation, the defendant, Chas. T. Mason, still occupying the position of general manager and electrical expert of the plaintiff company, gave a great portion of his time and attention to the services of the defendant company, in designing plans for its building and machinery, and selecting machinery therefor, and making contracts in regard to the construction thereof; and that, while so in the employment of the plaintiff corporation, he went east under some pretext of having a machine of small value repaired, although the same could have been ordered by correspondence, and while there purchased the machinery, tools, etc., for the defendant corporation, and yet charged to the plaintiff corporation the traveling and other expenses of his said trip, being absent from the office of the plaintiff corporation ten days or more (this being done without the knowledge or consent of the board of directors or the stockholders of the plaintiff corporation), when his absence for the purpose of having the

machine of the plaintiff corporation repaired need not have exceeded one day and two nights; and that, upon said trip, the said F. C. Manning, while so in the employment of plaintiff corporation, accompanied him upon the pretext that he wished to see some telephone exchange in the east, and his expenses were also paid by the company, he and the said Chas. T. Mason drawing their salaries for the time occupied by the trip; and that subsequently the said defendants, Chas. T. Mason and F. C. Manning, disregarding their duty and obligation to the plaintiff company, opened an office at the building erected by the defendant corporation, and plaintiff charges, have attended to all of the correspondence and other business matter of the defendant corporation in connection with the erection of the said building and the selection and purchase of the machinery, tools, etc., and the employment of the laborers therefor.

"18. That while so employed as the traveling agent and vice-president of the plaintiff corporation, the defendant, F. C. Manning, purchased at the expense of the plaintiff corporation, a blank book, without the authority of any officer of the corporation, and transferred into it much of the information which plaintiff corporation had acquired and caused to be recorded for its use as to the names of its customers, and style and character of their switch-boards, 'phones and other electrical appliances that they were using, and the prices at which the plaintiff corporation was selling the same to them, and in violation of the right of the plaintiff corporation, took said book from the premises of the plaintiff corporation, and this plaintiff charges that said information was taken for the purpose of being used for the benefit of the defendant corporation and against the interests of the plaintiff corporation.

"19. That plaintiff is informed and believes that upon the organization of the defendant corporation, $5,000 of its capital stock was agreed to be paid to the defendant, Chas. T. Mason, without charge, in consideration of his services; and plaintiff charges that same was to be in consideration of his

services rendered and to be rendered in the organization of said corporation and in connection therewith; and plaintiff is further informed and believes that a negotiation is now pending between the said Chas. T. Mason and the defendant corporation, whereby the said Chas. T. Mason is to transfer to them the patent rights held by him as aforesaid, which are, in justice and equity, the property of the plaintiff company, at the price of $5,000.

"20. Upon these facts, this plaintiff charges that while in the employment of the plaintiff corporation and occupying positions of confidence and trust therein, the said defendants, Chas. T. Mason and F. C. Manning, conspired together with others, whose names this plaintiff is not able to allege definitely, for the purpose of making use of the knowledge and information which they had acquired of plaintiff's business, its character and value, for the organization of the defendant corporation, and to transfer to it the business of the plaintiff corporation; and the plaintiff further charges that the name of the defendant corporation was selected because of its similarity to the name of the plaintiff corporation, and because of its identity with the name under which much of the plaintiff corporation's business had been and is transacted, as above alleged; and this plaintiff further charges that since the organization of the new company, much of the mail intended for the plaintiff corporation has been delivered to the defendant corporation and has been opened and read by the defendants, F. C. Manning and Chas. T. Mason, as officers of the defendant corporation, although they knew, or had reason to know, that the said mail was intended for the plaintiff corporation.

"21. This plaintiff charges that, in further pursuance of the said conspiracy, the said defendants, Chas. T. Mason and F. C. Manning, so long as they continued to be officers of the plaintiff corporation, neglected the business of the plaintiff corporation to a great extent, allowing the supplies for the work of the said corporation to run down, and that this was done with a view of impairing the credit of the plaintiff

corporation, so as to enable the defendant corporation easily to succeed to the business which the plaintiff corporation had built up, and they have been offering inducements to the employees of the plaintiff corporation to promise to leave the employment of the plaintiff corporation as soon as the defendant corporation was ready to start.

"22. The plaintiff alleges that it has been injured and damaged in its business by the conspiracy aforesaid, and by the acts alleged in the paragraphs of this complaint, commencing with the 16th, in the sum of $50,000.

"Wherefore, it demands judgment: 1. Against all of the defendants for the sum of $50,000. 2. That the defendant corporation be enjoined and restrained from continuing to make use of the name under which it was incorporated, or of conducting its business under that or any similar name, and that its officers and agents be enjoined and restrained from making use of the information so derived by the said defendants, Chas. T. Mason and F. C. Manning, from the business of the plaintiff corporation, and they be further enjoined and restrained from receiving the orders and other mail intended for the plaintiff corporation. 3. That it be ascertained what amount of capital stock or other consideration which is agreed to be paid to the defendant, Chas. T. Mason, or the defendant, F. C. Manning, by the defendant corporation, and whether the same or any part thereof be not in consideration of the services rendered and to be rendered by them to the defendant corporation, while the said Chas. T. Mason and F. C. Manning were employed as the officers and agents of the plaintiff corporation; and that the said capital stock or other consideration be adjudged to be paid over to the plaintiff corporation, and that the defendants, Chas. T. Mason and F. C. Manning, be required to deliver the same to this plaintiff corporation. 4. That it be adjudged that, as to the inventions, improvements and patents referred to in paragraph 12 of this complaint, the same are now and shall hereafter be held by the said Chas. T. Mason, his executors, administrators or assigns, as trustee or trustees for the bene-

fit and as the property of the plaintiff corporation, to be used in the business of the plaintiff corporation only, except as the plaintiff may hereafter direct or consent.    5. For such other and further relief as to the Court may seem just, and for the costs of this action."

The amended answer of the defendant, the Sumter Telephone Manufacturing Co., is as follows, omitting the first and second defenses:

"For a third defense: 1. This defendant alleges that the corporate name of the plaintiff corporation is Telephone Manufacturing Company of Sumter, S. C., and that its location and principal place of business is at Sumter, S. C.; but this defendant denies that the plaintiff has any exclusive right in the name of 'Sumter' or 'Sumter, S. C.,' nor has it any lawful right to the exclusive use of the same; and this defendant further alleges that the plaintiff has not acquired nor can it lawfully ever acquire any exclusive right in said name of 'Sumter' or 'Sumter, S. C.,' nor to the use thereof, the same being a geographical location and designation. That the said name 'Sumter' or 'Sumter, S. C.,' is not the subject of an exclusive property right in the plaintiff or in any other corporation, nor is the same a trade mark belonging to the plaintiff, nor has the plaintiff corporation any lawful right to appropriate to itself the exclusive use of the name Sumter or Sumter, S. C.

"2. The defendant further alleges that this defendant has been duly and lawfully chartered under and pursuant to the statutes of the said State and under the great seal thereof under the corporate name 'The Sumter Telephone Manufacturing Company;' that its geographical location and principal place of business is at Sumter, S. C., and that it is lawfully engaged in its business operations at Sumter, in said State, where it is now engaged in the manufacture of telephones and electrical apparatus as authorized by its said charter.    That the capital stock of the defendant corporation is the sum of $50,000, of which $30,000 have been paid in, and of which $10,000 more have been called in and will soon

become due and payable. That the great bulk of its said stock and the large majority of its shares thereof is owned and held by subscribers thereto residents of the city of Sumter, in said State, and embracing within their number none of the shareholders of the plaintiff corporation except its codefendants, C. T. Mason and F. C. Manning, each of whom have subscribed to the capital stock of this defendant in the sum of $5,000 and $4,000, respectively, all of which is payable in money. That no legal wrong or injury has been done to or suffered by the plaintiff by reason of the defendant's corporate name embracing the geographical designation 'Sumter,' and that no actual wrong or injury has been intended by this defendant nor suffered by the plaintiff in consequence of the corporate name of this defendant. That the names of the plaintiff and of this defendant do not designate the ownership of any particular telephone or switchboard or other mechanical device, nor the ownership of the same, nor any particular quality or value of the articles manufactured or to be manufactured by this defendant or the plaintiff, or otherwise handled by either the said plaintiff or this defendant. This defendant further alleges that the only name used by the plaintiff company in connection with its manufacture and sale of telephones is the name 'Imperial,' which is stamped upon said telephone, and for which it has secured a copyright under the acts of Congress in such cases made and provided, and this defendant has not interfered nor has it any intention of interfering in any manner with the aforesaid copyrighted name nor with the aforesaid corporate name of the plaintiff.

"3. This defendant further alleges that pursuant to its said charter it was duly organized on the        day of September, 1899, by the election of a board of directors, consisting of seven members, to wit: R. M. Wallace, Chas. G. Rowland, R. D. Lee, C. T. Mason, E. F. Manning, H. L. McClung and F. C. Manning; and that subsequently thereto the said board of directors pursuant to statute elected the following officers of the defendant corporation, to wit: R.

M. Wallace, president; C. T. Mason, vice-president and general manager; F. C. Manning, secretary, and Charles G. Rowland, treasurer. That shortly thereafter the said Chas. T. Mason resigned the office of general manager. That since the election of the said officers they have respectively discharged the duties pertaining to their several positions, but in no manner interfering with any duties owing by the said C. T. Mason and F. C. Manning to the plaintiff, and without in any manner to the injury of the plaintiff's business.

"For a fourth defense: 1. That defendant denies each and every allegation in said complaint contained except such as have been hereinbefore specifically admitted, and except such as may be consistent with admissions and allegations hereinbefore contained.

"For a fifth defense: 1. This defendant further alleges that on the          day of September, 1899, it was duly incorporated under the laws of said State under the name the Sumter Telephone Manufacturing Company, and was on said date duly organized by the election of the board of directors and officers named in paragraph 3 of the third defense of this answer. That shortly thereafter this defendant purchased the lot of land in the city of Sumter, S. C., referred to in the complaint, whereon to erect its factory, and paid therefor the sum of $3,600; that soon thereafter this defendant began the erection of a large brick factory building on said lot, and finally completed the erection of the same, equipment thereof with necessary costly machinery about the first of May, 1900—all at an expense of some $30,000. That this defendant performed all of said acts and operations under its corporate name aforesaid; and this defendant alleges upon information and belief that the plaintiff and its president, the said Peter E. Blow, during all of said period and whilst said acts and operations were being carried on by this defendant under its said corporate name, had full knowledge and notice of the same. That neither the said plaintiff nor its president, the said Peter E. Blow, made any complaint in reference thereto, nor made any objection

to the use of said name, nor gave this defendant notice that the use of its said corporate name was wrongful or injurious to the plaintiff, until the commencement of this action; and defendant alleges that the plaintiff is estopped now from claiming that the use by this defendant of its said corporate name was wrongful or injurious to the plaintiff, or that this defendant has no lawful right to the use of its said corporate name.

"For a sixth defense: 1. This defendant alleges that several causes of action have been improperly united in the complaints herein, namely: a. A cause of action against this defendant for injunction and equitable relief, with a cause of action against its codefendants, Charles T. Mason and F. C. Manning, for damages for an alleged conspiracy to destroy the business of the plaintiff. b. A cause of action against this defendant for injunction and equitable relief, with a cause of action against the defendants, Charles T. Mason and F. C. Manning, for damages for violation of contract in neglecting the business of the plaintiff whilst in its employment. c. A cause of action against this defendant for injunction and equitable relief, with a cause of action against the defendant, F. C. Manning, for damages for compiling in a certain book, the property of the plaintiff, valuable and secret information pertaining to the plaintiff's business, and abstracting the same from the plaintiff's premises for the use of this defendant. d. A cause of action against this defendant for injunction and equitable relief, with a cause of action against the defendants, Charles T. Mason and F. C. Manning, for breach of their contracts with the plaintiff as its employees, for damages for enticing the servants of the plaintiff from their employment and offering them special inducements to leave the service of the plaintiff. e. A cause of action against this defendant for injunction and equitable relief, with a cause of action against the defendants, Charles T. Mason and F. C. Manning, for damages suffered by plaintiff by reason of various unlawful acts set forth in the para-

graphs 16 to 21 of the complaint inclusive, alleged to have
been committed by the said defendants."

The answer of the defendants, C. T. Mason and F. C.
Manning, consisted of admitting the allegations of the com-
plaint as to its first, second and third articles, but denies those
allegations which charge C. T. Mason with neglect of duty.
That he was ever elected electrician of plaintiff's company
or that he conspired against the company. That his work
as an electrician belonged to the plaintiff. On the contrary,
he alleges that by his and his codefendant, F. C. Manning, the
prosperous business of plaintiff was built up and developed.
These defendants deny neglect of duty, want of fidelity to
the plaintiff and any conspiracy to break down the business
of plaintiff or injure the same. In fact, their joint answer
denies all allegations of the complaint except its allegations
one, two and three.

A reference was made to the master for Sumter County.
He took nearly 300 pages of printed testimony. After a
full argument from both sides, H. Frank Wilson, Esq., as
said master, made the following report, omitting the first
page and beginning with his findings:

"I find from the testimony as matters of fact:

"First. That the plaintiff company is a corporation duly
organized under the laws of the State of South Carolina,
under the name of 'Telephone Manufacturing Company of
Sumter, S. C.,' the charter of said company being dated May
21st, 1897.

"Second. That the defendant company is a corporation
duly organized under the laws of the State of South Carolina
under the name of 'The Sumter Telephone Manufacturing
Company,' the commission for the incorporation of said last
named company being dated September 23d, 1899, and its
charter being dated September 29th, 1899.

"Third. That C. T. Mason and Peter E. Blow organized
the plaintiff company with a capital stock of $5,000, each
taking one-half thereof in his own name. That Peter E.
Blow transferred one of his shares of the capital stock of

22—63

the plaintiff company to each of the following persons, to wit: one to F. C. Manning and one to Hiram J. Grover, jr. That the said Chas. T. Mason, Peter E. Blow, F. C. Manning and Hiram J. Grover, jr., were at the organization of the plaintiff company elected directors of said company. That Peter E. Blow was at said organization elected president, C. T. Mason was elected general manager, Hiram J. Grover, jr., was elected secretary and treasurer, and F. C. Manning was elected traveling agent respectively of said plaintiff company. That said F. C. Manning was subsequently elected vice-president of the plaintiff company, but continued to be its traveling agent also.

"Fourth. That the said Peter E. Blow was at the time of the organization of the plaintiff company and is now the president of the Southern Brass and Iron Works, of Knoxville, Tenn.

"Fifth. That prior to the organization of the plaintiff company, the said Chas. T. Mason was engaged in the manufacture of telephones and other electrical supplies in the city of Sumter, in said State of South Carolina, under the name of 'The Mason Electrical Works.'

"Sixth. That there was no such office as electrical expert provided for in the organization of plaintiff company, that no such office existed in connection with said company, nor was the defendant, Chas. T. Mason, ever elected to any such office, nor charged with any duties in making devices, improvements or inventions for the benefit of plaintiff company, or obtaining patents therefor, nor was there any contract or agreement, express or implied, between the plaintiff company and the said Chas. T. Mason, in reference thereto.

"Seventh. That prior to the organization of the plaintiff company, the said Chas. T. Mason had invented and was using a certain device called a 'gravity hook' in the manufacture of telephones; that subsequently to such organization, with a view to promoting its business and without any other consideration, he assigned the same to the plaintiff company, and that a patent therefor was duly issued to and

is now owned and used by the plaintiff company, but that neither the said C. T. Mason nor the defendant company lays any claim to the same, nor are they or either of them making any use thereof or threatening to do so. That on the 6th day of June, 1899, the defendant, Chas. T. Mason, obtained a patent for an invention of his own designated as 'circuit and apparatus for bridging telephones,' patent No. 626 and 624; that the same was at all times and now is his own individual property; that he permitted the plaintiff company to make use of the same in its business, giving the plaintiff 'shop-right' thereto without any charge for royalty thereon; that the same is of little value and has been used by the plaintiff company to a very limited extent; that the plaintiff company has no ownership thereof, but that the said patent is the sole property of the defendant, Chas. T. Mason.

"Eighth. That the defendant, Chas. T. Mason, subscribed for $5,000 of the $50,000 capital stock of the defendant company, the same being payable in money only, and that the same has been paid in by him in money; that there was no agreement between the defendant company and Chas. T. Mason to pay to the said Chas. T. Mason $5,000 of its capital stock without charge, in consideration of his services rendered and to be rendered in the organization of defendant company, as alleged in the complaint herein.

"Ninth. That the defendant, F. C. Manning, never secretly or otherwise transferred any information from the record book of the plaintiff company into any other book for the use of the defendant company, nor did he ever take away from the premises of the plaintiff company for the use of the defendant company any book containing any information concerning the business of the plaintiff company.

"Tenth. That the defendants, Chas. T. Mason and F. C. Manning, as officers of the plaintiff company, and while in its employ, did not give their time and attention to the business of defendant company, and did not, as such officers and employees, neglect to perform and discharge their duties to the plaintiff company, but on the contrary did faithfully give

all proper and necessary attention to its business; that they did not procure the employees of the plaintiff company to subscribe to or purchase the stock of the defendant company, nor to leave the employ of the plaintiff company for that of the defendant company; that they never entered into any contract, understanding or agreement with the said Peter E. Blow and Hiram J. Grover, jr., or either of them, to increase the capital stock of the plaintiff company, or to enlarge its plant or to purchase a site for a new plant, or to erect a new factory building, for and on behalf of the plaintiff company; that the said Chas. T. Mason and F. C. Manning, neither by themselves nor with other parties, conspired to wreck the business of the plaintiff company.

"Eleventh. That in selecting its corporate name and making prominent therein the word 'Sumter,' the defendant company intended to establish its permanent location for the manufacture of telephones in the city of Sumter; that the large majority in number and value of its stockholders were citizens of the city of Sumter, and that all of its executive officers were likewise citizens of the city of Sumter, 'and that said company desired to permanently identify itself by name with the name of the city of its location, and with no purpose of interfering in any manner with the name or business of the plaintiff company;' that there are three telephone companies with their places of business in the city of Sumter, to wit: First. 'The Sumter Telephone Company,' organized prior to the year 1897; second, 'Telephone Manufacturing Company of Sumter, S. C.,' organized May 21st, 1897, and third, 'The Sumter Telephone Manufacturing Company,' organized September 29th, 1899. 'The last two being engaged in the manufacture of telephones and the first in the business of a telephone exchange.' That the plaintiff company has not used the words of its corporate name, to wit: 'of Sumter, S. C.,' but that in its business transactions, in its corporate seal, in its certificates of stock, in its sign over its factory door, in its letter heads. in its envelopes, in its signature to its business letters, in its shipping tags and in its busi-

ness correspondence, covering a period of three years, the plaintiff company only used the name "Telephone Manufacturing Company,' and did not use the words of its corporate name, 'of Sumter, S. C.' That the plaintiff company was generally known and dealt with as 'The Telephone Manufacturing Company,' and was not known, called or dealt with as 'Telephone Manufacturing Company of Sumter, S. C.' That the plaintiff company applied for and obtained from the federal government as a trade mark for its products the registered name 'Imperial,' which trade mark is stamped upon its telephones and is used in its advertising matter. That the telephones manufactured by the plaintiff company are generally known as 'Imperial,' and that its reputation and business is based upon said trade mark name and not upon its corporate name. 'That the alleged similarity of the corporate names of the plaintiff company and the defendant company has not deceived the public. That by the exercise of due care no confusion need occur in the mail or other business affairs of the two companies by reason of the alleged similarity of corporate names.' 'That the plaintiff company has not suffered any loss, injury or damage by reason of the alleged similarity of corporate names, nor by reason of any of the facts alleged in the complaint herein.'

"Twelfth. That upon the organization of the defendant company, the president and other officers of the plaintiff company knew of the same and of its corporate name. That the said president and other officers of the plaintiff company knew of the purchase by the defendant company of the *lot* of land described in the complaint and of the taking title thereto in its corporate name; that they knew of the erection of its large and expensive brick building thereon, and of the purchase and installation of its expensive and costly machinery therein, at a cost of upwards of $30,000; that they knew of the use by the said defendant company of its corporate name in all of its business affairs, correspondence and general transaction, and that no objection thereto was ever made by the plaintiff company or any of its officers, nor any com-

plaint made of the adoption or use of its said corporate name until the commencement of this action."

Exceptions were taken by the plaintiff to this report and were argued in connection with the pleadings and the whole testimony offered at the hearing before the master. Let the exceptions to Judge Ernest Gary's decree be reported. We have carefully examined all this testimony and will not disturb any of the findings of fact and conclusions of law of Judge Gary. In fact, we are so impressed with his decree that we have concluded to adopt it as the judgment of this Court. It is as follows, omitting his statement of the issues raised by the pleadings:

"At the June term of said Court, an order of reference was made, referring it to the master of Sumter County 'to take the testimony and report his conclusions of fact as to the equity issues therein.'

"The master held a number of references, took a large amount of testimony on the issues involved, and after hearing argument of counsel engaged in the cause, filed his report on November 7th, 1900. It is not necessary to reproduce in this decree the conclusions of the master, it being considered sufficient to state in general terms, that he found all of the issues against the plaintiff company. To this report the plaintiff filed thirteen exceptions.

"At the hearing before me, exceptions numbered 1 to 7, inclusive, were not argued, though not abandoned. I do not, therefore, think it necessary to go into an extensive discussion of them. Suffice it to say that the testimony seems to be adequate to warrant the findings of the master. Exceptions 1 to 7, therefore, are overruled. Exceptions 8, 9, 10, 11 and 12 relate to the master's 11th finding of fact in reference to the corporate names of the plaintiff and defendant companies. This finding was the real question argued before me, and before discussing the same, it is thought better to reproduce such finding, which is: 'That in selecting its corporate name and making prominent therein the word "Sumter," the defendant company intended to establish its

permanent location for the manufacture of telephones in the city of Sumter; that the large majority in value and number of its stockholders were citizens of the city of Sumter, and that all of its executive officers were likewise citizens of the city of Sumter, and that said company desired to permanently identify itself by name with the name of the city of its location and with no purpose of interfering in any manner with the name or business of the plaintiff company. That there are three telephone companies with their principal place of business in the city of Sumter, to wit: "1st. The Sumter Telephone Company, organized prior to the year 1897; and 2d. Telephone Manufacturing Company, of Sumter, S. C., organized May 21st, 1897; and 3d. The Sumter Telephone Manufacturing Company, organized September 29th, 1899; the last two being engaged in the manufacturing of telephones and the first in the business of telephone exchange." That the plaintiff company has not used the words of its corporate name, to wit: "of Sumter, S. C.," but that in its business transactions, in its corporate seal, in its certificates of stock, in its sign over its factory door, in its letter heads, in its envelopes, in its signature to business letters, in its shipping tags and in its business correspondence, covering a period of three years, the plaintiff company only used the name "Telephone Manufacturing Company," and did not use the words of its corporate name, "of Sumter, S. C." That the plaintiff company was generally known and dealt with as the Telephone Manufacturing Company and not known, called or dealt with as "The Telephone Manufacturing Company of Sumter, S. C." That the plaintiff company applied for and obtained from the federal government as a trade mark for its products the registered name "Imperial," which mark is stamped upon its telephones, and is used in its advertising matter. That the telephones manufactured by the plaintiff company are generally known as "Imperial," and that its reputation and business is based upon said trade mark, and not upon its corporate name. That the alleged similarity of the plaintiff company and the

defendant has not deceived the public. That by the exercise of due care no confusion need occur in the mail or other business affairs of the two companies by reason of the alleged similarity of corporate names. That plaintiff company has not suffered any loss, injury or damage by reason of the alleged similarity of corporate names, nor by reason of any of the facts alleged in the complaint herein.'

"There is no doubt of the fact that confusion has occurred in the mail of these two companies, but the question is, does that afford sufficient grounds for the interference of a court of equity? 'The rule is, that if such confusion can be avoided by the use of ordinary care, the Courts will not interfere.' The master has also found that the public has not been misled by reason of the similarity of the corporate names of the two companies. If this finding is true, then it seems to me that there should be no interference by a court of equity; for, as is said in Cook on Corporations (note to section 15) : 'the ground on which courts of equity afford relief in this class of cases, is the injury to the party aggrieved, and the imposition upon the public by causing them to think that the goods of one man or firm are the product of another.'

"Again: 'The use of any particular name by a corporation will not be enjoined unless it be clearly proven that the complainant will suffer injury.' In section 15, the author, quoting from a New York case, says : The Courts interfere in these cases, not on the ground that the State may not affix such corporate names, 'as it may that, to the entities it creates, but to prevent fraud, actual or constructive.' In several of the States, statutes have been enacted, prohibiting their officers from granting charters under the same identical names as those of existing corporations, or so nearly similar as are calculated to deceive the public.' In a proper case the Courts will act independently of statutes on the subject in this State. 2 High on Injunctions, sec. 1068. The author says : 'The jurisdiction rests upon fraud upon the part of the defendant, and upon the principle that equity will not allow one to sell his own goods under the pretense that they are the

goods of another.'    And in sec. 1069 : 'The right to relief is rather dependent upon the necessity of extending protection against the commission of fraud * * *' All authorities hold that persons dealing with the two companies must exercise 'due care' so as to avoid being misled.    2 High on Injunctions, sec. 1966, sec. 1068, sec. 1090.    *Blackwell* v. *Wright*, 73 N. C., 310, says : 'But if it appear that the trade mark alleged to be imitated, though resembling the complainant in some respects, would not probably deceive the ordinary mass of purchasers, an injunction will not lie.'

"In the case under consideration, it appears that only a few errors have occurred in the mass of correspondence between the respective companies and their customers.    The same principles apply in cases of the similarity of corporate names and those of the similarity of trade marks, each being entitled to protection under identically the same rules and principles.    The name of a corporation from necessity is its trade mark.    4 Amer. & Eng. Ency., 1 ed., 206 ; 2 High on Injunctions, sec. 1081 ; 1 Cook on Corporations, sec. 15, note.

"Besides, the real contention in this case is over the name 'Sumter,' both companies being located in that city and both having the word 'Sumter' in their corporate names—the plaintiff having the words 'Sumter, S. C.,' affixed at the end of its corporate name and never making use of the same, and the defendant company, on the contrary, making the word 'Sumter' prominent in its name by placing the same at the beginning thereof.    There is also a third company doing business in that city, its name being the 'Sumter Telephone Company,' but which is not involved in this controversy. It appears from testimony that the word and letters, 'Sumter, S. C.,' in the plaintiff's corporate name, has never been used in any of its business transactions, even its most important acts, such as its corporate seal, its certificates of stock, signatures to correspondence, etc.    Nor has the plaintiff ever been known or called by its full corporate name, the word and letters, 'Sumter S. C.,' being always omitted.    Indeed,

as the master has further found, the plaintiff's business and reputation is based not upon its corporate name, but upon its registered trade mark, to wit: 'Imperial.'

"Now, the plaintiff seeks a perpetual injunction prohibiting the defendant company from using its corporate name embracing the word 'Sumter,' the name of the city where it is located, or any similar name, whilst the plaintiff company has never made use of such name including said words itself. To permit the plaintiff alone to have the word 'Sumter' in its corporate name and prohibit all other companies located there from having the word 'Sumter' in their corporate names, would be to permit the plaintiff exclusively to appropriate and acquire property in the name of the city of Sumter, a geographical designation, and thus tending to create 'mischievous monopoly.' The name of a city or town is the property of the public, and the use of such a name cannot be exclusively appropriated by any one. In 26 Amer. & Eng., 327, it is said: 'Geographical terms—It must be considered as settled in the United States that no one can apply the name of a district of country to any article of commerce and thereby acquire such an exclusive right to the application as to prevent others inhabiting the same district or dealing in similar articles coming from the district from truthfully using the same designation. The nature of geographical names is such that they cannot point to the origin (personal origin) or ownership of the articles of trade to which they are applied. They point only to the *place* of production not to the producer, and could they be appropriated exclusively, their appropriation would result in mischievous monopolies. * * * The general doctrine is laid down that before a claimant to a trade mark can enjoin another using the same without his license, he must show that either he or others joined with him in the suit, or who could be joined with him, have an exclusive right to employ the particular trade mark, for the particular purpose, and this state of facts can never exist in the case of a geographical term, which represents such a district or *place,* that others might with equal right

establish a similar business at the same place, and designate their goods truthfully as emanating from that particular place' (italics mine). *Cement Co.* v. *Cement Co.,* 44 Fed. Rep., 277. Here it is held that a geographical name cannot be protected as a trade mark. To the same effect also are the following cases: *Evans* v. *VonLeer,* 32 Fed. Rep., 153; *Pratt Mfg. Co.* v. *Astral Ref. Co.,* 27 Fed. Rep., 492; *Glendon Iron Co.* v. *Uhler,* 75 Penn. Rep. (15 Am. Rep., 599); *Del. etc. Canal Co.* v. *Clark,* 80 U. S., 311. 2 High on Injunctions, sec. 1094. Here the author says: 'It may be stated as a general rule, * * * that a manufacturer cannot acquire such property in the name of a town or place where his goods are manufactured as to entitle him to an injunction to prevent other manufacturers in the same town or place from using that name to designate the place of manufacture of their goods, in the absence of any piracy of plaintiff's own name.'

"Exception 13 is to the master's finding numbered 13, which relates to the question of estoppel from knowledge by the plaintiff's officers, etc. This exception was not argued at the hearing before me, but the facts found by the master appear to be sustained by testimony, and this exception is overruled.

"From the foregoing review of the testimony in this case and the authorities applicable to the question under consideration, it is adjudged and decreed that the plaintiff is not entitled to the relief prayed for. in the complaint, and it is ordered, that the report of the master be and the same is hereby confirmed, the exceptions thereto overruled, and that the complaint be and the same is hereby dismissed."

So, therefore, we overrule each exception to the decree of the Circuit Judge.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.